

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-12-00642-CR

**EX PARTE** Mary S. **ROBERTS**

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2006CR6404A-W2
Honorable Sid L. Harle, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:       Marialyn Barnard, Justice
               Patricia O. Alvarez, Justice
               Luz Elena D. Chapa, Justice

Delivered and Filed:  July 17, 2013

REVERSED AND REMANDED

Mary Roberts applied for a writ of habeas corpus, challenging an order modifying the terms
of her community supervision to include a $70,000 "restitution" payment to a charity.[1] *See* TEX.
CODE CRIM. PROC. ANN. art. 11.072, § 2(b)(2) (West 2005). The habeas court denied her relief,
and she appealed. We agree with Roberts that the trial court lacked the authority to modify the
terms of her community supervision to require a $70,000 payment to a charity. Because the habeas
court should have granted relief and deleted the "restitution" provision from the terms of her

---

[1] Roberts previously attempted to challenge the order on direct appeal. *Roberts v. State*, No. 04-11-00154-CR, 2011
WL 2150762 (Tex. App.—San Antonio May 25, 2011, pet. ref'd) (per curiam) (mem. op., not designated for
publication). We dismissed her appeal for want of jurisdiction and noted an application for a writ of habeas corpus
was the correct procedural vehicle for challenging an order *modifying* the terms of her community supervision. *See
id.*; *Ex Parte Huffman*, 9 S.W.3d 302 (Tex. App.—San Antonio 1999, no pet.).

community supervision, we will reverse and remand this cause to the habeas court with instructions to do so.

## BACKGROUND

Roberts was convicted of five counts of theft by coercion and deception. This court set out a detailed synopsis of the facts underlying her convictions in our opinion affirming the convictions on direct appeal, *see Roberts v. State*, 319 S.W.3d 37, 40–46 (Tex. App.—San Antonio 2010, pet. ref'd), but we will briefly summarize facts relevant to this appeal.

Roberts and her husband engaged in an extortion scheme in which Roberts would engage in extramarital affairs, and her husband would subsequently threaten her partners with court action unless they paid him not to pursue any legal claims. *Id.* Some of the extortion payments were delivered as checks made out to a children's charity set up and controlled by Roberts and her husband. *Id.*

The trial court sentenced Roberts to ten years' imprisonment for each count of theft to run concurrently. The judgments of conviction reflect that "$0.00" in restitution was assessed or ordered on each count of theft. The court probated each sentence for ten years and required Roberts to perform 400 hours of community service as a term of her community supervision. Roberts and the State agree that the court did not order restitution and it stated "there are no victims in this case other than the respective families of the paramours and yourself." The order containing the terms of her community supervision did not set any restitution.

In February 2011, after this court affirmed her convictions and three years after the original imposition of community supervision, the trial court modified the terms of Roberts's community supervision. The court ordered that Roberts be given the same terms of community supervision as her husband—which apparently included restitution. When Roberts objected and argued the court had already declined to order any restitution in her case, the trial court replied "[n]o restitution to

the paramours. Restitution to the charitable corporation." Roberts again objected and the court told her to "appeal it."

At a subsequent hearing, the court explained that Roberts was ordered to pay $70,000 to a charitable corporation. The court acknowledged that it initially "assessed no restitution in regard to the paramours/alleged complainants." But because the couple extorted funds in the amount of $70,000[2] under the guise of charitable donations, the trial court ordered Roberts to jointly and severally with her husband make an equal payment to a charitable corporation approved by the probation department.

We dismissed Roberts's appeal of the order for want of jurisdiction. Roberts then filed an application for a writ of habeas corpus in the court that sentenced her, and the court denied relief. She now appeals the court's order denying habeas relief.

## STANDARD OF REVIEW

We review an order denying relief on a writ of habeas corpus for abuse of discretion. *Ex Parte Twine*, 111 S.W.3d 664, 665 (Tex. App.—Fort Worth 2003, pet. ref'd). Thus, a habeas court's factual findings, especially those based on determinations of witnesses' credibility and demeanor are afforded great deference, and its application of the law to those factual findings is accorded similar deference. *Id.* However, if the court's application of the law to the facts does not rest on factual findings, it is afforded no deference and we review de novo. *Id.* at 665–66.

## COMMUNITY SUPERVISION

The trial court has the authority to set the conditions of community supervision and to modify those conditions at any time during the period of community supervision. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 11(a) (West 2005 & Supp. 2012). The court "may impose any reasonable

---

[2] An amount stipulated to by Roberts's husband at his probation hearing.

condition that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant." *Id.* But the court may not levy monetary payments as a condition of community supervision except for "fines, court costs, restitution to the victim, and other conditions related personally to the rehabilitation of the defendant or otherwise expressly authorized by law." *Id.* art. 42.12, § 11(b); *see also Busby v. State*, 984 S.W.2d 627, 629–30 (Tex. Crim. App. 1998) ("The specific statute controls over the general. Subsection 11(b) acts as a limitation on the conditions that are authorized by subsection 11(a).").

## ANALYSIS

Roberts contends the trial court was without authority to order her to pay $70,000 in restitution to any charity benefitting children because Roberts was not convicted of a crime against a particular charity or any charity at all. She also argues the court could not modify the terms of her community supervision to include restitution three years after the conditions were first imposed at the time of her sentencing. The State concedes the trial court could not modify Roberts's terms of community supervision to include restitution for both the reasons advanced by Roberts, but it argues the court could have validly modified the terms of Roberts's community supervision to impose the $70,000 payment because it is related personally to Roberts's rehabilitation, as opposed to being restitution. We hold the trial court lacked the authority to impose a monetary payment on Roberts as a term of her community supervision.

*Restitution*

Restitution is a punishment, and as a punishment, restitution attempts to redress the wrongs for which a defendant has been charged and convicted in court. *Ex Parte Cavazos*, 203 S.W.3d 333, 338 (Tex. Crim. App. 2006). Restitution may only be ordered for victims of the defendant's offense and the statutorily-established crime victims' fund. TEX. CODE CRIM. PROC. ANN. art. 42.037(a) (West 2005 & Supp. 2012); *Campbell v. State*, 5 S.W.3d 693, 697 (Tex. Crim. App.

1999) ("[A] trial court may not order restitution to any but the victim or victims of the offense with which the offender is charged."). A trial court may not order restitution for an offense for which the defendant is not criminally responsible. *Campbell*, 5 S.W.3d at 697.

On remand in *Bailey v. State*, the Houston Court of Appeals analyzed whether restitution could be imposed on a defendant who was convicted of failure to stop and render aid after being involved in an accident. 171 S.W.3d 639 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *see* TEX. TRANSP. CODE ANN. §§ 550.021, 550.023 (West 2011). The statute has a prerequisite requiring the defendant have been involved in an accident resulting in the injury or death of a person or damage to a vehicle driven or attended by a person. TEX. TRANSP. CODE ANN. § 550.021(a). The State argued that, because the defendant was involved in an accident as the statute required, the victim's injuries stemmed from the offense. *Bailey*, 171 S.W.3d at 642. The court rejected that argument, holding that while the statute required the defendant be in an accident, the actual prohibited conduct under the statute is a driver's failure to stop driving, return to the scene of the accident, and remain at the scene of the accident until the drivers have exchanged contact information and rendered reasonable assistance. *Id.* at 642–43; TEX. TRANSP. CODE ANN. §§ 550.021(a), (c); 550.023. Because the State stipulated the victim did not suffer any additional damages or injuries due to the defendant's failure to stop and render aid—i.e., the criminal conduct—the injuries sustained by the victim were not attributable to the criminal conduct for which the defendant was convicted. *Bailey*, 171 S.W.3d at 643. The court accordingly held the trial court abused its discretion in ordering restitution and reformed its judgment to delete the restitution provision. *Id.*

Under the *Bailey* analysis, the trial court in this case could not order Roberts to pay restitution to a charity that was not a victim of the crime for which she was convicted. Roberts was not charged with stealing from the charity or mismanaging its funds, and the trial court made it

clear to the jury in the charge that it could not consider whether she committed any such crime.[3] Instead, Roberts was convicted of extorting five men with whom she had extra-marital affairs. The fact that some of the extortion payments were routed through a charity does not make the charity a victim of Roberts's extortion racket. The victims of the offenses for which Roberts was convicted were in fact the men whom she helped her husband extort. Moreover, if the charity were considered a victim, the trial court did not have the authority to order Roberts to pay restitution to a different or unrelated charity because the charity that was actually victimized no longer existed.

Roberts and the State also agree that, even though the trial court could have validly ordered restitution at the time of her original sentencing, the court was without the authority to *modify* her terms of community supervision to include restitution at a later date. *See Bailey v. State*, 160 S.W.3d 11, 16–18 (Tex. Crim. App. 2004) (Cochran, J., concurring) ("The trial court may not, however, alter or modify the terms and conditions of probation to add a restitution order which was never made orally in open court and in the defendant's presence at the sentencing hearing."). However, because we have held restitution could not be ordered for a charity unconnected to the crimes for which Roberts was convicted, we need not address this ground.

*Conditions Related Personally to a Defendant's Rehabilitation*

The State argues that, although the trial court could not modify Roberts's terms of community supervision to include restitution, the trial court was within its authority to impose the $70,000 payment on Roberts because the court had the authority to order payments which are "related personally to the rehabilitation of the defendant." *See* TEX. CODE CRIM. PROC. ANN. art.

---

[3] "You have heard evidence concerning the withdrawal of money from one or more charitable foundation bank accounts, and that these withdrawals happened after April 2002. Mary Roberts has not been charged with illegally taking money from a charitable foundation. Likewise, she has not been charged with committing any crime with the respect to the administration or dissolution of the charitable foundation. Therefore, you are not to consider whether she committed any crime against any charitable foundation or against any purported beneficiaries of any charitable foundation."

42.12, § 11(b). Roberts responds the trial court clearly intended the payment to be restitution and it cannot be reasonably construed as being "related personally" to her rehabilitation. We agree with Roberts that, under the facts of her case, the ordered payment was not "related personally" to her rehabilitation.

We have neither found nor been directed to any authority discussing when a condition of community supervision is "related personally to a defendant's rehabilitation." *Id.*; *but see Vento v. State*, 724 S.W.2d 948, 949 (Tex. App.—Amarillo 1987, no pet.) (one term of probation required DWI defendant to complete a program "specifically designed to rehabilitate persons who have driven while intoxicated" and to pay for the program ahead of time); *Clark v. State*, No. 02–11–00378–CR, 2013 WL 978931, at *1 (Tex. App.—Fort Worth Mar. 14, 2013, no pet.) (mem. op., not designated for publication) (purported purpose of ordering defendant to attend programs and evaluations and to pay associated fees was to rehabilitate defendant convicted of family violence). The Code of Criminal Procedure does provide "[a]ll words, phrases and terms used in [the Code] are to be taken and understood in their usual acceptation in common language, except where specially defined." TEX. CODE CRIM. PROC. ANN. art. 3.01 (West 2005). In a criminal law context, rehabilitation may be defined as "the process of seeking to improve a criminal's character and outlook so that he or she can function in society without committing other crimes." BLACK'S LAW DICTIONARY 1398-99 (9th ed. 2009); *see Vento*, 724 S.W.2d at 949; *Clark*, 2013 WL 978931, at *1.

Consistent with the dictionary definition of rehabilitation, Roberts proposes examples of conditions that would relate personally to the rehabilitation of a defendant, such as "payments for treatments for alcohol or drug abuse; anger management counseling; parenting issues or psychological/psychiatric treatments." We agree these examples fit within the definition of rehabilitation. They seek to improve a defendant's character and outlook so that she may again

participate in society without committing other crimes. *See, e.g., Vento*, 724 S.W.2d at 949; *Clark*, 2013 WL 978931, at *1. The statute authorizes a court to order a DWI defendant to pay for alcohol counseling, a defendant convicted of assault to pay for anger-management classes, or a parent convicted of neglect to pay for parenting classes. In each case, the ordered payments would be related personally to the defendant's condition and would, hopefully, have the salutary effect of helping the defendant not to re-offend.

In opposition, the State posits that we can glean the rehabilitative nature of the ordered payment from the facts of Roberts's crimes. It asserts in a conclusory manner that, because some of Roberts's victims disguised their extortion payments as charitable donations and none of the money was used for its stated purpose, a payment to a charity unrelated to her crime would reform her. We disagree. Unlike the examples we discussed above, there is no connection between the ordered payment and Roberts's rehabilitation, her future integration into society, or her chances of recidivism. Accordingly, we hold the habeas court erred in denying Roberts habeas relief.

## CONCLUSION

We reverse the order of the trial court and remand with instructions to the trial court to grant the requested habeas relief and to delete the condition requiring Roberts to pay joint and several restitution with the defendant in 2006CR6404B from the terms and conditions of Roberts's community supervision.

Luz Elena D. Chapa, Justice

PUBLISH