**Opinion issued February 25, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

### NO. 01-13-00958-CR

————————————

## EX PARTE CRESENCIO ZANTOS-CUEBAS, Appellant

---

**On Appeal from the County Court**
**Grimes County, Texas**
**Trial Court Case No. 24,581**

---

## O P I N I O N

Appellant Cresencio Zantos-Cuebas was charged by information with the misdemeanor offense of terroristic threat towards a person with whom he had a dating relationship. *See* TEX. PENAL CODE ANN. § 22.07 (West 2011). Appearing before the constitutional county court without counsel, he pleaded guilty. The

county court deferred adjudication, imposed a fine of $400, and placed him on community supervision.

Zantos-Cuebas is not a United States citizen. After being placed on community supervision, U.S. Immigration and Customs Enforcement detained him and initiated deportation proceedings. He filed an application for writ of habeas corpus with the constitutional county court, praying that his plea and the court's order placing him on community supervision be vacated. As justification, he claims that he does not understand English, and accordingly his rights were not adequately explained to him, to the effect that he did not knowingly and intelligently waive his constitutional rights in conjunction with entering his plea of guilty. The court denied the relief requested and held that the application was frivolous. Zantos-Cuebas now appeals, arguing that his guilty plea was involuntary.

We reverse the determination that the habeas corpus petition was frivolous because the court could not determine from the face of the application that Zantos-Cuebas was "manifestly entitled to no relief." Accordingly, we remand the cause for the entry of a written order including findings of fact and conclusions of law. TEX. CRIM. PROC. CODE ANN. art. 11.072, § 7(a).

2

## Background

Though not a United States citizen, Zantos-Cuebas has lived in this country since 2002. He was charged in the constitutional county court of Grimes County with the misdemeanor offense of terroristic threat. Although there is no reporter's record documenting the plea entered in the case, the clerk's record of the habeas corpus proceeding is before us. It contains two English-language documents recording Zantos-Cuebas's plea of guilty.

The first document is titled "Written Admonishments with Defendant's Written Waiver of Rights and Stipulation of Evidence." The first two pages of the document recite that after the case was called to trial, Zantos-Cuebas appeared in person, waived his right to counsel, and "The Court proceeded to admonish the Defendant pursuant to Art. 26.13 T.C.C.P. . . . ." The document noted the consequences of a plea of guilty, including the punishment range for a Class A misdemeanor. These written admonishments included a paragraph that stated: "**CITIZENSHIP:** If you are not a citizen of the United States of America, a plea of guilty or nolo contendere to this offense may result in your deportation, exclusion from entry into this country, or the denial of naturalization under federal law." The document also listed admonishments of various constitutional rights, such as the right to counsel, the right to a jury trial, the right to confront witnesses,

and the right against self-incrimination. The bottom of the second page was dated and signed by the county judge.

The following page, bearing the page number 3 at the bottom of the page, bore the heading: "Stipulations of Evidence, Waiver of Rights and Judicial Confession."  In an apparent reference to the first two pages described above, the first sentence of page 3 reads: "Having all the forgoing fully explained by the Court and after having the Court admonish the Defendant of the consequences of the waiver and plea, the Defendant hereby waives the above rights and hereby enters a plea of **GUILTY/~~NOLO CONTENDERE~~** and further makes the following judicial admissions . . . ." It proceeded to identify Zantos-Cuebas as the defendant and the charge against him; it stated" "It is my desire to enter a plea of **GUILTY** in the foregoing named and numbered cause. In doing so I wish to waive the following: 1. My right to a trial by jury; 2. The appearance, cross examination, and confrontation of witnesses . . . ." Page 4 was signed and sworn to by Zantos-Cuebas, signed by the prosecutor, and signed by the county judge.

The other relevant document is titled "Order Deferring Adjudication of Guilt and Placing Defendant on Community Supervision" and is signed by Zantos-Cuebas and the county judge. It included the following recital: "The defendant was admonished by the Court of the consequences of said plea yet the defendant persisted in pleading as aforesaid."

In his habeas corpus petition, Zantos-Cuebas alleged that he does not "speak or write the English language." He averred that at the time he pleaded guilty, he was accompanied by a seventeen-year-old friend named Leslie Sanchez, who came along to act as an interpreter. Sanchez is not, however, a licensed court interpreter. *See* TEX. GOV'T CODE ANN. § 57.001 (West 2013). Among other things, Zantos-Cuebas alleges that nobody translated the admonishments about his constitutional rights.

Pursuant to his plea of guilty, Zantos-Cuebas was placed on deferred adjudication community supervision. He was later detained and subjected to deportation proceedings by U.S. Immigration and Customs Enforcement. He sought to withdraw his plea of guilty by filing an application for habeas corpus relief, supported by affidavits. *See* TEX. CRIM. PROC. CODE ANN. art. 11.072, § 2(a) (West 2005). Without holding a hearing, the county judge denied his application, handwriting on the last page of the exhibits: "I do not deal with anything about citizenship, deportation or anything involving immigration." The county judge signed this statement, as well as a separate typed order denying habeas corpus relief and finding the application to be frivolous. *See id.* art. 11.072, § 7(a). The judge did not enter findings of fact or conclusions of law.

This appeal followed. *See id.* art. 11.072, § 8.

**Analysis**

Zantos-Cuebas argues that the trial court abused its discretion by denying his application for habeas corpus relief. In his petition to the trial court and in his brief on appeal, Zantos-Cuebas relied principally on *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473 (2010), to argue that his plea was not entered voluntarily and knowingly because the trial judge did not admonish him of the immigration consequences of his plea. He also argued in a more general fashion that his plea was not voluntary because he was not made aware that he was waiving other constitutional rights, such as his right to a jury trial. He claims that any such admonitions presented by the court were not translated by Sanchez.

We review a trial court's ruling on a habeas corpus application for abuse of discretion. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). However, "appellate courts review *de novo* those 'mixed questions of law and fact' that do not depend upon credibility and demeanor." *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007); *see also Ex Parte Weinstein*, No. WR–78,989–01, 2014 WL 300802, at *5 (Tex. Crim. App. Jan. 29, 2014); *Ex parte Pritzkau*, 391 S.W.3d 185, 186 (Tex. App.—Beaumont 2012, no pet.). "[I]f the court's application of the law to the facts does not rest on factual findings, it is

6

afforded no deference and we review de novo." *Ex parte Roberts*, 409 S.W.3d 759, 762 (Tex. App.—San Antonio 2013, no pet.).

Article 11.072 of the Code of Criminal Procedure "establishes the procedures for an application for a writ of habeas corpus in a felony or misdemeanor case in which the applicant seeks relief from an order or a judgment of conviction ordering community supervision." TEX. CRIM. PROC. CODE ANN. art. 11.072, § 1. Those seeking relief pursuant to article 11.072 are required to file an application for writ of habeas corpus with "the clerk of the court in which community supervision was imposed." *Id.* art 11.072, § 2(a). "At the time the application is filed, the applicant must be, or have been, on community supervision," and the application must challenge the legal validity of "the conviction for which or order in which community supervision was imposed . . . ." *Id.* art. 11.072, § 2(b).

The trial court receiving the application is required to enter a written order granting or denying the relief sought. *Id.* art. 11.072, § 6(a). "In making its determination, the court may order affidavits, depositions, interrogatories, or a hearing, and may rely on the court's personal recollection." *Id.* art. 11.072, § 6(b).

Section 7 of article 11.072 establishes two procedures by which a trial court may dispose of the application. *Id.* art. 11.072, § 7(a). The first procedure allows for summary dismissal of facially frivolous applications. *Id.* It applies when,

looking solely to the face of the application and attached documents, the application is determined to be frivolous: "If the court determines from the face of an application or documents attached to the application that the applicant is manifestly entitled to no relief, the court shall enter a written order denying the application as frivolous." *Id.* Otherwise, a second procedure applies, and the trial court cannot rule on the application without entering findings of fact and conclusions of law: "In any other case, the court shall enter a written order including findings of fact and conclusions of law." *Id.*

In this case, the trial court entered a written order denying the application as frivolous and did not enter written findings of fact or conclusions of law. Our analysis therefore begins by considering whether the court erred in "determin[ing] from the face of [the] application or documents attached to the application" that Zantos-Cuebas was "manifestly entitled to no relief" such that his application should be declared "frivolous." *See id.*

Determining from the face of an application for habeas corpus and accompanying documents whether the applicant is "manifestly entitled to no relief" does not involve making findings of fact or evaluating the credibility of witnesses. Any analysis of whether such a claim has any facially arguable basis does not call on a court to determine the truth or falsity of factual allegations made therein but only to apply the law to the facts as depicted in the application and

8

accompanying documents. Therefore, a trial court's determination that an application is frivolous is properly reviewed de novo. *See Peterson*, 117 S.W.3d at 819; *Roberts*, 409 S.W.3d at 762.

When a criminal defendant pleads guilty, he waives several constitutional rights, such as the right to a trial by jury, the right to confront the witnesses against him, and his Fifth Amendment privilege against self-incrimination. *Davison v. State*, 405 S.W.3d 682, 686 (Tex. Crim. App. 2013). "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469 (1970). It follows that in order for a guilty plea to be valid, "the defendant must have an actual awareness of . . . the constitutional rights and privileges that he necessarily relinquishes." *Davison*, 405 S.W.3d at 686. In other words, he must have "a full understanding of what the plea connotes and of its consequence." *Boykin v. Alabama*, 395 U.S. 238, 244, 89 S. Ct. 1709, 1712 (1969).

In *Aleman v. State*, 957 S.W.2d 592 (Tex. App.—El Paso 1997, no pet.), the defendant, who spoke only Spanish, pleaded guilty at a group arraignment to the charge of driving while intoxicated. 957 S.W.2d at 593. He was convicted and later moved for a new trial on the grounds that the absence of an interpreter rendered his

plea involuntary. *Id.* The trial court denied his motion for new trial, but the El Paso court reversed. *Id.* at 594.

The court pointed out that while there was some provision for Spanish–English interpretation at the group proceeding when the appellant entered his plea, such translation facilities were inadequate. *Id.* Although a court interpreter had been present, her sole task was to assist the group of Spanish-speaking defendants in completing a form (composed in poorly-written Spanish) entitled "Renuncia de los Derechos por Demandado Criminal sin Representation," which in English translates as "Waiver of the Rights of a Criminal Defendant without Representation." *Id.* at 593 & n.2. The defendant told the interpreter that he could not afford an attorney but was dissatisfied with the jail time recommendation contained in the plea agreement. *Id.* at 593–94. The interpreter, however, made no effort to communicate the defendant's position to the trial judge, and these concerns did not otherwise reach his ears. *Id.* at 594.

When the *Aleman* defendant entered his plea of guilty, the court interpreter was no longer present and the county prosecutor doubled as translator. *Id.* The prosecutor was negotiating plea bargains with appellant and the other Spanish-speaking defendants as he was translating the court's explanation of their due process rights. *Id.* Given the failure of the prosecutor or court interpreter to relay

the defendant's concerns about his plea to the trial court, the court of appeals ruled that his plea had been involuntary. *Id.*

The *Aleman* court recognized that adhering to the requirements of the Code of Criminal Procedure with respect to translation services would have averted the violation of the defendant's constitutional rights. *Id.* The Code requires that "[w]hen a motion for appointment of an interpreter is filed by any party or on motion of the court, in any criminal proceeding, it is determined that a person charged or a witness does not understand and speak the English language, an interpreter must be sworn to interpret for the person charged or the witness." TEX. CODE CRIM. PROC. ANN. art. 38.30(a) (West 2005). Moreover, the trial judge has an affirmative obligation to appoint a translator when he is aware that a defendant has a problem understanding the English language. *Garcia v. State*, 149 S.W.3d 135, 145 (Tex. Crim. App. 2004). Thus, absent a knowing and voluntary waiver made on the record, "the judge has an independent duty to implement this right," regardless of whether the matter is raised by the parties. *Id.* A failure to do so results not only in a statutory violation but can render a defendant's plea constitutionally involuntary, *Aleman*, 957 S.W.2d at 594, or violate his right to confront the witnesses against him, *Garcia*, 149 S.W.3d at 145.

Zantos-Cuebas's petition for habeas corpus alleged that he speaks only Spanish and that his amateur interpreter, Sanchez, interpreted some, but not all of,

11

the proceedings. He pleaded that "Lesli Sanchez did not translate the admonishments of pleading guilty to the offense and the resulting immigration consequences of a plea. Lesli Sanchez did not translate Applicant's waiver of constitutional rights, stipulation of evidence, and judicial confession to appellant." He therefore claimed that his plea was entered involuntarily as he had not been admonished of the immigration consequences of his plea or the constitutional rights that he was waiving. He attached affidavits supporting his claims from himself and Sanchez. In her affidavit, Sanchez described what happened at the court as follows:

> During court, I was given paperwork for Cresencio [Zantos-Cuebas] to sign before the judge called his case. The paperwork stated how he would do probation, community service, payments to pay off what he pleaded guilty for. I did not translate or explain anything about citizenship, deportation, or anything involving immigration to Cresencio or that he could be in trouble with immigration. After I translated the paperwork given to me, Cresencio signed the papers but I did not translate anything about immigration or deportation.
>
> When the judge called Cresencio's case, Cresencio and I went up to the Judge. I translated for Cresencio in front of the Judge. The Judge did not mention anything having to do with immigration matters or consequences. The Judge did tell Cresencio what he was charged with. The judge did not ask Cresencio about his immigration status during her questioning, Once Cresencio declared himself guilty, the Judge gave him nine whole months of probation. After I translated the paperwork given to me, Cresencio signed the papers but I did not translate anything about immigration or deportation.

In his own affidavit, which was translated into English, Zantos-Cuebas stated:

I was representing myself in this case. I do not speak or write the English language. I speak and write Spanish. Lesli Sanchez was my interpreter in this case on July 18, 2013.

I would have never pleaded guilty to the charges and agreed to deferred adjudication if I had known that it would affect my immigration status. I would have insisted on going to trial if I had known that pleading guilty could affect my immigration status.

I didn't know that I was waiving my rights when I appeared in court. I didn't know I was waiving my right to fight the case. If I had known that I was waiving all of my rights by pleading guilty I wouldn't have pleaded guilty.

Lesli Sanchez did not tell me anything regarding immigration or regarding the rights I would waive by pleading guilty.

On their face, the application and affidavits submitted by Zantos-Cuebas indicate that he entered his plea without an awareness of the constitutional rights he was waiving thereby. The application and affidavits purport to show that Zantos-Cuebas does not speak English, and that he relied on a 17-year-old friend to translate for him in the courtroom. Under the facts as alleged, the court would have been obliged to appoint a translator for the proceedings. The Court of Criminal Appeals has been emphatic that the mere provision of some translation services or the mere presence of a bilingual speaker is not the equivalent of appointing the sworn interpreter that the law requires. *See Garcia*, 149 S.W.3d at 142–43; *Baltierra v. State*, 586 S.W.2d 553, 559 n.11 (Tex. Crim. App. 1979) (deeming it insufficient to appoint bilingual counsel for defendant). Indeed, the *Garcia* court stressed that a bilingual person is not necessarily competent to translate legal

13

proceedings because courtroom interpretation is a sophisticated art unto itself: it demands prompt judgment, a ready memory, a discriminating ear, and an extensive vocabulary—including legal terms and street slang. *Garcia*, 149 S.W.3d at 143.

Zantos-Cuebas's application and the affidavits attached thereto set out a case that he had "difficulty understanding English," and that Sanchez translated for him "in front of" the trial judge. *See id.* at 145. This is direct evidence of the falsity of the admonitions and stipulations written in English and signed by Zantos-Cuebas which suggest otherwise. If true, under such circumstances, the court would have been "required to ensure that the trial proceedings were translated into a language which [he] underst[ood]." *Id.* Zantos-Cuebas's claim—that his plea was involuntary and unintelligent because it was not made with awareness of the constitutional rights he was waiving—is therefore a claim with a facially arguable basis in law and fact. *See Davison*, 405 S.W.3d at 686–87; *Aleman*, 957 S.W.2d at 594; *cf. United States v. Perez*, 918 F.2d 488, 490 (5th Cir. 1990) ("An adequate understanding of the English language is a threshold requirement for a voluntary plea."). The face of the application and affidavits do not indicate that Zantos-Cuebas was "manifestly entitled to no relief." Accordingly, it was error for the trial judge to find that the application was frivolous. *See* TEX. CRIM. PROC. CODE ANN. art. 11.072, § 7(a).

In reaching this conclusion, we are not unmindful of the records of Zantos-Cuebas's guilty plea contained in the clerk's record, which recite that he was admonished of the rights he was waiving and that his plea was entered voluntarily and knowingly. Nonetheless, our determination that the application was not frivolous is based strictly on a review of the face of the application and the accompanying affidavits. *See id.* On remand, the trial court may properly consider the records of the plea proceeding and its own recollection. *See id.* art. 11.072, § 6(b). However, in order to comply with article 11.072, a trial court that relies on such evidence collateral to the face of the application must accompany its written ruling with findings of fact and conclusions of law. *See id.* art. 11.072, § 7(a).

In its response, the State argues that the affidavits of Sanchez and Zantos-Cuebas are not properly part of the record on appeal. It relies upon Rule 34.5 of the Texas Rules of Appellate Procedure and *State v. Guerrero*, 400 S.W.3d 576 (Tex. Crim. App. 2013), in support of this proposition. However, nothing corresponding to such a limitation appears in the referenced appellate rule. *See* TEX. R. APP. P. 34.5. Similarly, the State's reliance on *Guerrero* is mistaken. *Guerrero* established that "sworn pleadings are an inadequate basis upon which to grant relief" in a habeas case. 400 S.W.3d at 583 (citing *Ex parte Garcia*, 353 S.W.3d 785, 789 (Tex. Crim. App. 2011)). Here, Zantos-Cuebas did not submit verified pleadings but rather attached affidavits in support of his request for relief.

15

Therefore, the quoted proposition from *Guerrero* is inapposite. Furthermore, there is nothing irregular about the use of affidavits to accompany an application for writ of habeas corpus under article 11.072. *See id.* (contemplating that evidence in a proceeding under article 11.072 will be presented at a live hearing or through affidavits); *Ex parte Fassi*, 388 S.W.3d 881, 887 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("[T]he court may consider affidavits attached to the application and the State's response."); *Ex parte Cummins*, 169 S.W.3d 752, 757 (Tex. App.—Ft. Worth 2005, no pet.) ("[W]e find nothing in article 11.072 prohibiting the trial court from considering evidence filed with the application or with the State's response.").

In light of our holding that the trial court erred in denying the application as frivolous, we will remand the case to the trial court for further proceedings. *See* Tex. R. App. P. 31.3 ("The appellate court will render whatever judgment and make whatever orders the law and the nature of the case require."). The statutory procedure contemplates that a trial court will summarily dispose of a habeas corpus application found to be frivolous on its face with a written order to that effect. *See* Tex. Crim. Proc. Code Ann. art. 11.072, § 7(a). If, solely from the face of the application, it cannot be judged frivolous, the trial court should then consider the merits of the application in light of the full range of evidence before it. *See id.* art. 11.072, §§ 6(b), 7(a). ("In making its determination, the court may order

16

affidavits, depositions, interrogatories, or a hearing, and may rely on the court's personal recollection."). Having done so, its written order disposing of the application must include findings of fact and conclusions of law. *Id.* art. 11.072, § 7(a). Express findings of fact are of particular importance in the article 11.072 context since trial judges deciding applications are allowed to "rely on the court's personal recollection," the contents of which would otherwise be untraceable on the written record. *See id.* art. 11.072, § 6(b).

In summary, it is necessary to remand this case for further proceedings so that the procedures specified by the Code of Criminal Procedure may be followed. *See* TEX. R. APP. P. 43.3; *Ex parte Arjona*, 402 S.W.3d 312, 319 (Tex. App—Beaumont 2013, no pet.) ("An appellate court may remand a habeas proceeding to the trial court if the factual record has not been sufficiently developed."); *Ex parte Enriquez*, 227 S.W.3d 779, 784–85 (Tex. App.—El Paso 2005, pet. ref'd) (remanding case so that trial court, which neither made written finding that habeas application was frivolous nor entered findings of fact and conclusions of law, could comply with statute); *cf. Ex Parte Baldez*, No. 04–13–00494–CR, 2014 WL 60094, at *2 (Tex. App.—San Antonio Jan. 8, 2014, no pet. h.) (abating appeal and ordering trial court to comply with statute by either entering findings of fact and conclusions of law or finding application frivolous on its face).

Our conclusion that the application must be remanded to the trial court renders it unnecessary at this time for us to address Zantos-Cuebas's argument that *Padilla* entitles him to relief.

## Conclusion

We reverse and remand the case to the trial court for the entry of a written order including findings of fact and conclusions of law.


Michael Massengale
Justice

Panel consists of Justices Keyes, Higley, and Massengale.

Justice Keyes, dissenting.

Publish. TEX. R. APP. P. 47.2(b).