**Opinion issued February 24, 2026**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-24-00141-CR

————————————

**ERICK MARTINEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 300th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 95182-CR**

## MEMORANDUM OPINION

Appellant, Erick Martinez, pled guilty to aggravated robbery and was placed on deferred-adjudication community supervision.[1] The State subsequently filed a motion to adjudicate Martinez's guilt, alleging violations of the terms of his

---

[1] *See* TEX. PENAL CODE § 29.03.

community supervision. After an evidentiary hearing, the trial court found several of the State's alleged violations to be true, adjudicated Martinez's guilt for aggravated robbery, and sentenced him to 50 years' imprisonment.

On appeal, Martinez says we must reverse. He argues that the trial court violated his rights by failing to appoint a Spanish-language interpreter during the hearing on the State's motion to adjudicate guilt. We review a trial court's decision on whether to appoint an interpreter for an abuse of discretion, considering the record before us and applying controlling precedent.

On this record, under controlling precedent, we conclude that the trial court's decision not to appoint an interpreter does not fall outside the zone of reasonable disagreement; the trial court could have determined that Martinez spoke English "well enough" to understand the proceedings and assist in his defense. *See Linton v. State*, 275 S.W.3d 493, 500, 502 (Tex. Crim. App. 2009); *see also Flores v. State*, 509 S.W.2d 580, 581 (Tex. Crim. App. 1974). Accordingly, we affirm the judgment of the trial court.

## BACKGROUND

### *The Plea Hearing*

In June 2022, Martinez pleaded guilty to aggravated robbery. The trial court accepted the plea, deferred adjudication, and placed Martinez on community supervision for a period of eight years.

An interpreter was present at this plea hearing. For background purposes, we note that, at the hearing, Martinez responded in English to the trial court's questions, acknowledged that he could read and write English "a little bit," and confirmed that he understood the plea paperwork and admonishments. His attorney (the same attorney Martinez had at the hearing at issue here) stated that Martinez "speaks pretty good English." And Martinez exchanged pleasantries in English, ending with: "Thank you, sir. You have a good one."[2]

---

[2] The plea hearing colloquy went as follows:

THE COURT: *You understand some English*.
THE DEFENDANT: (In English) *Yes, sir.*
THE COURT: All right.
[DEFENSE COUNSEL]: *He speaks pretty good English*. It's -- just wanted to be sure, Your Honor.
THE COURT: *No worries. I want to make sure, as well. All right.*
THE DEFENDANT: *Yes.*
THE COURT: All right. All the paperwork that I'm looking at is in English. *Do you read and write the English language?*
THE DEFENDANT: (In English) *Yes, sir.*
THE INTERPRETER: Yes, sir.
THE DEFENDANT: (In English) *A little bit.*
THE INTERPRETER: A little bit.
THE COURT: And so, has someone gone through all these documents with you?
THE DEFENDANT: (In English) *Yes, sir.*
THE INTERPRETER: Yes, sir.
THE COURT: And explained them to you --
THE DEFENDANT: (In English) *Yes, sir.*
THE INTERPRETER: Yes, sir.
THE COURT: -- so that you understand them?
THE DEFENDANT: (In English) *Yes, sir.*
THE INTERPRETER: Yes, sir.
THE COURT: All right. Do you understand the range of punishment in this case is a first degree felony, not less than five nor more than 99 years or life --
THE DEFENDANT: (In English) Yes, sir.

The plea hearing took place before a different judge than the later hearing on the motion to adjudicate guilt.

***Motion to Adjudicate Guilt and January 2024 Hearing***

Later, the State filed a motion to adjudicate guilt, alleging that Martinez had violated the terms of his community supervision. The motion was scheduled for a contested hearing in April 2023, but it was rescheduled for May. An interpreter was appointed for the May hearing, but the hearing was again postponed. The hearing on the motion to adjudicate was reset two more times before ultimately going forward in January 2024.

This appeal focuses on that January 2024 hearing. The record is clear that, at the January 2024 contested hearing, Martinez did not have an interpreter present.

---

THE INTERPRETER: Yes, sir.
THE COURT: -- and a fine of up to $10,000?
THE DEFENDANT: (In English) Yes, sir.
THE INTERPRETER: Yes, sir.
THE COURT: Have you understood the instructions I've given to you today?
THE DEFENDANT: (In English) *Yes, Your Honor.*
THE INTERPRETER: Yes, Your Honor.
THE COURT: Do you still want to proceed with the plea?
THE DEFENDANT: (In English) *Yes, sir.*
THE INTERPRETER: Yes, sir.

. . . .

THE COURT: Good luck to you.
THE DEFENDANT: (In English) *Thank you, sir. You have a good one.*
THE COURT: Thank you, sir.

(Emphasis added.)

The record reflects Martinez answering questions in English throughout that hearing. Underlying this appeal, at one point—when the trial court asked whether he wished to waive reading of the State's motion—Martinez stated, "I don't understand," "I don't get it," "Can I get a translation?" The trial court then read the motion aloud, and Martinez pleaded "not true."

Neither Martinez nor his attorney raised any other concern throughout the proceedings regarding his understanding of the proceedings or his ability to communicate with counsel. Nor does the record contain such a showing.

The hearing proceeded on the merits, and the State called multiple witnesses to establish that Martinez violated the terms of his probation. One such witness was Martinez's probation officer, V. Rodriguez. Rodriguez testified that she was assigned to a general caseload of Spanish-speaking clients and that she reviewed Martinez's probation conditions with him in Spanish.

At the hearing's conclusion, the trial court found several violations true and adjudicated Martinez guilty of the underlying charge of aggravated robbery.[3] The court sentenced Martinez to 50 years' imprisonment. Martinez appealed.

---

[3] The State notes a discrepancy between the trial court's oral pronouncement and written judgment regarding which specific conditions Martinez violated. On this basis, the State asks us to modify the judgment to match the oral pronouncement. We cannot do so. As we have said: "[W]hen the discrepancy between the oral pronouncement and written judgment involves which terms and conditions of probation were violated, and on the basis of which violations the probation should be revoked and adjudication of guilt should be entered, the written order of the court

**DISCUSSION**

On appeal, Martinez contends the trial court violated his constitutional rights when it conducted the adjudication hearing without appointing a Spanish-language interpreter. But applying the requisite abuse-of-discretion standard to this record, under controlling precedent, we conclude the trial court acted within the zone of reasonable disagreement in declining to appoint an interpreter. Accordingly, we affirm.

**A.     This issue is properly before us.**

As an initial matter, the State argues that Martinez failed to preserve error by not objecting below to the lack of an interpreter. Not so.

Under binding precedent, the right to an interpreter "is a category-two *Marin* right"[4] that cannot be forfeited and must be implemented unless knowingly and voluntarily waived by the defendant. *Garcia v. State*, 149 S.W.3d 135, 145 (Tex. Crim. App. 2004); *accord Linton*, 275 S.W.3d at 502; *see also Hughes v. State*, 691 S.W.3d 504, 518–19 (Tex. Crim. App. 2024) (due-process right to be present in a hearing on a motion to adjudicate guilt is waivable but not forfeitable under *Marin*).

---

controls over the oral announcement." *Willis-Webb v. State*, No. 01-15-00727-CR, 2016 WL 6277423, at *3 (Tex. App.—Houston [1st Dist.] Oct. 27, 2016, pet. ref'd) (mem. op., not designated for publication). The State conceded this point during oral argument.

[4]     *See Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993), *overruled in part on other grounds by Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997).

Texas law instructs that a criminal defendant may raise for the first time on appeal complaints as to the alleged deprivation of a category-two *Marin* right. *See Garcia*, 149 S.W.3d at 144–45; *Linton*, 275 S.W.3d at 502; *Hughes*, 691 S.W.3d at 519; *see also Proenza v. State*, 541 S.W.3d 786, 792 (Tex. Crim. App. 2017) (same).

We thus address Martinez's arguments.

## B. The trial court did not abuse its discretion in declining to appoint an interpreter for Martinez.

### 1. Background law.

"It is well settled that if a defendant cannot hear or does not speak English well enough to understand the trial proceedings or communicate with counsel, fundamental fairness and due process of law require that an interpreter be provided to translate between English and the accused's own language." *Linton*, 275 S.W.3d at 500; *see also Garcia*, 149 S.W.3d at 140–41.

Under Texas precedent, constitutional due process protections require that a defendant sufficiently understand the "nature and objective of the proceedings against him" to be able to "assist in his own defense." *Linton*, 275 S.W.3d at 500, 508; *accord Ex parte Cockrell*, 424 S.W.3d 543, 557 (Tex. Crim. App. 2014).

Accordingly, precedent instructs that the trial court must provide a communication solution that gives the defendant the required "minimum level" of understanding. *Linton*, 275 S.W.3d at 501. "The question on appeal is not whether the 'best' means of interpretive services were employed, but whether the services

that were actually employed were constitutionally adequate such that the defendant could understand and participate in the proceedings." *Id.* at 500.

Precedent also instructs that due process protections apply in hearings on motions to adjudicate guilt and related deferred adjudication proceedings, like the one at issue here. *See Hughes*, 691 S.W.3d at 513–15 (due process applies to hearings to adjudicate guilt, which threaten a defendant's conditional liberty and may lead directly to conviction and imprisonment); *Ex parte Doan*, 369 S.W.3d 205, 212 (Tex. Crim. App. 2012) (community-supervision revocation proceedings "are judicial proceedings, to be governed by the rules established to govern judicial proceedings").[5]

---

[5] In arguing that a violation of his constitutional rights took place, Martinez argues violations of both his due process rights and his rights under the Confrontation Clause of the Sixth Amendment. *See Linton*, 275 S.W.3d at 501 (Confrontation Clause includes right to have trial proceedings presented in a way that the accused can understand); *Garcia*, 149 S.W.3d at 140–41 (same). Whether the Confrontation Clause applies in probation and related adjudication hearings is unsettled in Texas. *See Hughes*, 691 S.W.3d at 520–21 (question of Confrontation Clause's applicability in hearings on motions to adjudicate guilt "will have to wait until another day"); *cf. United States v. Henry*, 852 F.3d 1204, 1206 (10th Cir. 2017) (Gorsuch, J.) ("Confrontation Clause of the Sixth Amendment does not apply to supervised release revocation proceedings . . . .").

But even assuming for these purposes that confrontation protections apply, Martinez's argument fails for the same reasons his due process argument fails, as explained below. *See Flores*, 509 S.W.2d at 580–81 (no Confrontation Clause violation where the record showed that defendant—who was much more fluent in Spanish—sufficiently understood English to understand his trial proceedings); *see also Linton*, 275 S.W.3d at 500–01, 506–09 (defendant's complaints regarding inadequate deaf interpreter services did not establish a violation of due process or confrontation rights; record showed defendant had constitutionally required

We review a trial court's decision on whether to appoint an interpreter for an abuse of discretion, understanding that the trial court has the opportunity to observe the defendant's comprehension and ask him questions. *See Linton*, 275 S.W.3d at 500, 502–03 ("[T]he trial judge—having the defendant in his presence, observing his level of comprehension, and asking him questions, has wide discretion in determining the adequacy of interpretive services."); *see also Balderas v. State*, 517 S.W.3d 756, 777 (Tex. Crim. App. 2016) ("[I]n considering challenges to the adequacy of interpretive services, this Court and other appellate courts have deferred to the wide discretion of the trial judge, who had direct contact with the witness, the parties, and the interpreter, to make decisions."). The ultimate question is whether any inadequacy or lack of interpretation made the trial "fundamentally unfair." *Linton*, 275 S.W.3d at 503.

We are instructed to affirm "absent a clear abuse of discretion, that is, only when [the] ruling lies outside the zone of reasonable disagreement." *Id.*; *accord Balderas*, 517 S.W.3d at 777–78; *Tolentino v. State*, __ S.W.3d __, __, No. 01-22-00442-CR, 2025 WL 2471800, at *4 (Tex. App.—Houston [1st Dist.] Aug. 28, 2025, pet. filed).

---

minimum level of understanding to participate in the proceedings and assist in her defense).

**2. Analysis.**

We do not take lightly the important protections the Constitution provides in this regard. But based on this record, and under the controlling standard of review and precedent, we cannot conclude that the trial court abused its discretion in determining that Martinez understood English well enough to understand the proceedings and assist in his defense—and thus, in declining to appoint Martinez an interpreter. *See Linton*, 275 S.W.3d at 500–03, 508; *Balderas*, 517 S.W.3d at 777; *Tolentino*, 2025 WL 2471800, at \*4, \*10–11.

Throughout the hearing on the motion to adjudicate (which is quoted in part below), the record shows Martinez responding appropriately in English to the court's questions. He answered "No, sir," when asked whether he was a U.S. citizen and "Yes, sir," to numerous substantive questions, confirming, for example, that he understood the punishment range, any possible fine, the risk of deportation, and that he had sufficiently communicated with his attorney about the consequences of a finding of guilt.

In arguing that an interpreter was required, Martinez relies on the following colloquy, which concerns his understanding of a question asked by the trial court about waiving his right to have the motion to adjudicate read aloud:

> THE COURT: All right. I have before me this motion, which you can have the Court read aloud. You're entitled to have it read aloud to you, or you can waive its reading. What would you like to do?
> THE DEFENDANT: *I don't understand it. I don't get it.*

10

THE COURT: All right. So, are you waiving having the motion read aloud to you?

THE DEFENDANT: *I don't even know what you're saying, sir.*

THE COURT: Okay. So, you have the right to have this first-amended motion read to you aloud right now; or if you understand the allegations that are set forth in the motion to adjudicate guilt, you can waive their reading. What would you like to do?

THE DEFENDANT: *I waive.*

THE COURT: You'll waive it?

THE DEFENDANT: *What? I don't understand. Can I get a translation?*

THE COURT: A translation?

THE DEFENDANT: Yeah.

*[DEFENSE COUNSEL]: You don't know the words?*

THE DEFENDANT: *I don't speak English like that.*

THE COURT: You don't speak English like that? Well, how do you speak it?

THE DEFENDANT: *I don't --*

THE COURT: You can give up your right to have me read this aloud to you, or if you –

THE DEFENDANT: *You can read it.*

THE COURT: -- want, I can read it.

THE DEFENDANT: *You can read it.*

THE COURT: Okay. I'll read it to you.

(Emphasis added.)

We agree with Martinez that this colloquy reflects some lack of understanding—at least initially—of the trial court's question about whether Martinez wanted to have the motion read aloud or instead to waive that reading. Were we the trial court, we might well have paused at that point and sought clarification as to what, specifically, Martinez did not understand, asking more open-ended questions. *See Linton*, 275 S.W.3d at 511 (Johnson, J., concurring) ("It may

11

assist the trial court in its evaluation to question the defendant directly. Questions should be open-ended."). We likewise might well have appointed an interpreter.

But the issue before us is not what we would have done in that instance. Nor is it whether the "best" practice was employed. *See Linton*, 275 S.W.3d at 500 ("The question on appeal is not whether the 'best' means of interpretive services were employed . . . .").

Instead—as precedent instructs—the question is whether the trial court abused its discretion in determining that Martinez (who the trial court had the opportunity to observe firsthand) understood English "well enough" to understand the proceedings against him and assist in his defense. *Id.* at 500–02, 504 (appellate courts review under abuse of discretion standard whether trial court ensured that defendant had constitutionally required "minimum level" of understanding of proceedings necessary to assist in his defense).

In *Linton*, the Court of Criminal Appeals held that the trial court did not abuse its discretion by declining to provide the "best" possible interpretive services for a deaf defendant, so long as the defendant had a sufficient understanding of the proceedings to assist in her defense. *Id.* at 508. Although an expert testified there that the defendant missed some content, the record showed that she responded coherently and cogently to questions, had some education, participated in the proceedings, and consulted with counsel and interpreters, which was sufficient to

satisfy due process. *Id.* at 499, 509. Additionally, the court explained that the defendant failed to identify any specific testimony not understood or specific communication problems with counsel—or show how such failures rendered the trial "fundamentally unfair" and a violation of her due process rights. *Id.* at 509.

That law controls here. Martinez does not argue on appeal that he had difficulty communicating with his attorney—nor does he identify any specific instances during the hearing in which he could not communicate adequately with counsel. He likewise does not identify any testimony that he did not understand. He does not show an inability to assist with his defense. Nor does he show how any asserted failures rendered the trial fundamentally unfair and a violation of due process. He does not explain how, in light of all circumstances, his argued lack of understanding of the question quoted above shows he was unable to understand the proceedings against him or assist in his defense—such that the trial court abused its discretion in not appointing an interpreter.

The record shows that, after the trial judge read the State's motion aloud (following the colloquy quoted above—which ended with Martinez informing the trial judge: "you can read it"), the hearing continued with Martinez answering numerous questions in English, including his plea to the allegations and multiple admonitions concerning the punishment range and immigration consequences. Neither Martinez nor his counsel raised any concern about Martinez's understanding

of the proceedings or ability to assist with his defense[6]—nor does the record reflect a lack of understanding of the proceedings or inability to communicate with counsel or assist with his defense:

> [THE COURT]: To the allegations 1 through 14 as set forth in this motion, how do you plead, true or not true?
> THE DEFENDANT: *Not guilty.*
> THE COURT: So, not true?
> THE DEFENDANT: *Not true, sir.*
> THE COURT: All right. And have you ever had any mental problems or been adjudged insane by any court?
> THE DEFENDANT: *No, sir.*
> THE COURT: Do you understand that the -- if the Court finds an allegation true, that the range of punishment in this case is not less than -- or between not less than 5 years in the penitentiary but not more than 99 years or life in prison?
> THE DEFENDANT: *Yes, sir.*
> THE COURT: And up to a 10,000-dollar fine?
> THE DEFENDANT: *Yes, sir.*
> THE COURT: All right. And do you understand that if you are not a U.S. citizen and you are found guilty, that you could be deported --
> THE DEFENDANT: *Yes, sir.*
> THE COURT: -- and denied readmission to this country?
> THE DEFENDANT: *Yes, sir.*
> THE COURT: And are you a U.S. citizen?
> THE DEFENDANT: *No, sir.*
> THE COURT: Okay. You're not?
> THE DEFENDANT: *(Defendant shakes head.)*
> THE COURT: Have you had sufficient opportunity to talk to your attorney about the consequences of a finding of guilt by the Court on your immigration status?
> THE DEFENDANT: *Yes, sir.*
> THE COURT: All right. And, [defense counsel], you have training and education or experience in handling immigration matters as they relate to criminal cases such as this one?

---

[6] Martinez and his lawyer did not need to raise the issue to preserve it, as explained above.

[DEFENSE COUNSEL]: Yes, Your Honor.

THE COURT: And you believe that you've been able to adequately provide advice to your client with regard to the issues that could present with his immigration status if the Court were to adjudicate him guilty today?

[DEFENSE COUNSEL]: Yes, Your Honor, that was even from the very first time he pled to this case.

THE COURT: All right. Anything else before we proceed? Let me go back. Have you understood all of the admonitions that I've given you?

THE DEFENDANT: *Yes, sir.*

THE COURT: Anything else before we proceed?

[THE STATE]: No, Your Honor.

THE COURT: All right.

(Emphasis added.)

Furthermore, the record reflects that Martinez initially intended to testify, but he decided not to do so after discussing the matter with his lawyer. Counsel explained: "We talked about it," when informing the court that Martinez would in fact not testify.[7]

Under all the circumstances, the trial court could have reasonably determined that Martinez understood English well enough to understand the proceedings and

---

[7]   The record shows the following on this point:

> THE COURT: Okay. State rests. Does defense have any witnesses.
> [DEFENSE COUNSEL]: *The defendant would want to testify, Your Honor.*
> THE COURT: All right. We're going to take a recess until 1:00 o'clock. . . .
> (Lunch recess taken.)
> THE COURT: Let's go back on the record. Defense may call its first witness.
> [DEFENSE COUNSEL]: The defense rests, Your Honor. *We talked about it on the break.*

(Emphasis added.)

assist in his defense. *See Linton*, 275 S.W.3d at 506, 509; *Flores*, 509 S.W.2d at 581 (no error in refusing to appoint interpreter for trial after attorney told the trial court that appellant "does speak English but it is halting and he is very slow about it" and he was "much more fluent in Spanish"). We are mindful that the trial judge was interacting with Martinez, had him "in his presence, observing his level of comprehension, and asking him questions," which Martinez answered appropriately. *See Linton*, 275 S.W.3d at 500, 502–03.

On this record, we cannot say the trial court's decision falls outside the zone of reasonable disagreement such that it was an abuse of discretion.[8] *See id.* at 500–03, 508; *Balderas*, 517 S.W.3d at 777; *see also Tolentino*, 2025 WL 2471800, at *4, *10–11 (no abuse of discretion where trial judge found interpretive services constitutionally adequate even though they were in defendant's non-native language); *Jaimes v. State*, 611 S.W.3d 78, 82–85 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) (similar); *Abdygapparova v. State*, 243 S.W.3d 191, 201–03 (Tex. App.—San Antonio 2007, pet. ref'd) (similar). Nor has Martinez shown the hearing

---

[8] Our decision is based on the record before us. We note that Martinez remains free to file a habeas petition, to which he may attach an affidavit or other evidence (to the extent such evidence exists) supporting a claim as to how specifically he was unable to understand the proceedings or assist in his defense. *See, e.g., Ex parte Zantos-Cuebas*, 429 S.W.3d 83, 90-91 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (habeas corpus application was not frivolous based on affidavit stating defendant had "difficulty understanding English" and did not have interpreter at plea proceedings). We express no opinion on the outcome of any such proceeding.

was fundamentally unfair. *See Linton*, 275 S.W.3d at 503; *Jaimes*, 611 S.W.3d at 85.[9]

We overrule Martinez's issue.

## CONCLUSION

We affirm the trial court's judgment.

Jennifer Caughey
Justice

Panel consists of Justices Guerra, Caughey, and Dokupil.

Do not publish. TEX. R. APP. P. 47.2(b).

---

[9] Beyond his constitutional arguments, Martinez also points to Code of Criminal Procedure Article 38.30. The version of that provision applicable at the time of the revocation hearing stated that, "[w]hen a motion for appointment of an interpreter is filed by any party or on motion of the court, in any criminal proceeding, it is determined that a person charged or a witness does not understand and speak the English language, an interpreter must be sworn to interpret for the person charged or the witness." Act of May 26, 2005, 79th Leg., R.S., ch. 956, § 1, art. 38.30(a), 2005 Tex. Gen. Laws 3225, 3225 (amended 2025).

At oral argument, defense counsel conceded that the record reflects no motion seeking the appointment of an interpreter. Counsel thus focused his argument on the Constitution—which, as explained, does not require a motion—stating that his constitutional claims were stronger than his statutory argument. Martinez's statutory argument does not support reversal. As counsel conceded, the record reflects no motion here. Nor does the record reflect a determination that Martinez does not understand and speak the English language. Although the trial court could have appointed an interpreter on its own, for the reasons explained in this Opinion, on this record, the court did not reversibly err in failing to do so.