ACCEPTED
01-15-00250-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
7/9/2015 3:04:13 PM
CHRISTOPHER PRINE
CLERK

**No. 01-15-00250-CR**

In the Court of Appeals for the
First District of Texas
At Houston

——————◆——————

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

7/9/2015 3:04:13 PM

CHRISTOPHER A. PRINE
Clerk

No. 1943590
In County Criminal Court at Law Number Seven
Of Harris County, Texas

——————◆——————

*Ex parte*
**JULIO GIALITO ARUIZU**
*Appellant*

——————◆——————

**State's Appellate Brief**

——————◆——————

**Devon Anderson**
District Attorney
Harris County, Texas

**Molly Wurzer**
Assistant District Attorney
Harris County, Texas

**Clinton A. Morgan**
Assistant District Attorney
Harris County, Texas
State Bar No. 24071454
morgan_clinton@dao.hctx.net

1201 Franklin St., Suite 600
Houston, Texas 77006
Telephone: 713.755.5826

Oral Argument Not Requested

**Statement Regarding Oral Argument**

The appellant requested oral argument, though he gave no particular reason why. The State believes that the briefs in this case adequately apprise this Court of the issues and the law, and any marginal benefit from oral argument does not justify the considerable amount of time that preparation for oral argument requires of the parties and the Court. The State does not request oral argument.

## Identification of the Parties

Counsel for the State:

       Devon Anderson
            —— District Attorney of Harris County

       Molly Wurzer
            — Assistant District Attorney on original application

       Clinton A. Morgan
            —— Assistant District Attorney on appeal

Appellant:

       Julio Gialito Aruizu

Counsel for the Appellant:

       Lance Nguyen
            — Counsel on original application and on appeal

Trial Judge:

       Pam Derbyshire
            —— Presiding judge

# Table of Contents

Statement Regarding Oral Argument ................................................i

Identification of the Parties ............................................. ii

Table of Contents .......................................................... iii

Index of Authorities ......................................................iv

Statement of the Case ....................................................1

Statement of Facts .......................................................1

Summary of the Argument................................................4

**Reply to Point One**

The appellant did not conclusively prove his innocence. His affidavits failed to rebut the State's evidence. Moreover, in light of the police officer's report the trial court had a basis for concluding that the appellant's evidence was not credible. ................................................. 6

I.    Standard of Review: The trial court's findings of fact are entitled to near-total deference, and its ultimate decision is reviewed only for an abuse of discretion. ...................................... 6

II.   Argument

A.    The appellant's *Herrera* claim fails because he did not produce evidence conclusively showing his innocence....................... 8

B.    This Court should reject the appellant's "*Schlup-type* claim of innocence" because *Schlup* is irrelevant to this case. ....................... 11

**Reply to Point Two**

The appellant's ineffective-assistance claim is barred by laches because he waited more than twelve years to raise it and he has offered no reason to justify the delay................................................ 14

Conclusion ............................................................... 17

Certificate of Compliance and Service........................................... 18

# Index of Authorities

**Cases**

*Ex parte Ali*
368 S.W.3d 827 (Tex. App.—
Austin 2012, pet. ref'd) ................................................................7

*Ex parte Bowman*
447 S.W.3d 887 (Tex. Crim. App. 2014) ....................................... 15

*Ex parte Carrio*
992 S.W.2d 486 (Tex. Crim. App. 1999) ....................................... 14

*Ex parte Garcia*
353 S.W.3d 785 (Tex. Crim. App. 2011) ........................................6

*Ex parte Navarilo*
433 S.W.3d 588 (Tex. Crim. App. 2014) ..................................... 9, 10

*Ex parte Perez*
398 S.W.3d 206 (Tex. Crim. App. 2013) ...................................14, 15

*Ex parte Tuley*
109 S.W.3d 388 (Tex. Crim. App. 2002) ........................................8

*Ex Parte Villegas*
415 S.W.3d 885 (Tex. Crim. App. 2013) ....................................... 13

*Ex parte Zantos-Cuebas*
429 S.W.3d 83 (Tex. App.—
Houston [1st Dist.] 2014, no pet.) ................................................7

*Herrera v. Collins*
506 U.S. 390 (1993) ......................................................................8

*Kniatt v. State*
206 S.W.3d 657 (Tex. Crim. App. 2006) ........................................7

*Schlup v. Delo*
513 U.S. 298 (1995) ..................................................................11, 12

*Shanklin v. State*
190 S.W.3d 154 (Tex. App.—
Houston [1st Dist.] 2005), *pet. dism'd, improvidently granted*
211 S.W.3d 315 (Tex. Crim. App. 2007) ........................................7

**Statutes**

Tex. Code Crim. Proc. art. 11.072 ................................................................ 6

## Statement of the Case

In July 2002, the appellant pleaded guilty to the misdemeanor offense of assaulting a family member. (CR 12). In accord with an apparent plea bargain, the trial court assessed punishment at fifteen days' confinement in the county jail. (CR 12).

In January 2014, the appellant filed an application for a writ of habeas corpus challenging his 2002 conviction. (CR 5-10). In February, 2014, the appellant filed an amended petition. (CR 19-26). The trial court denied relief. (CR 104). The appellant filed a notice of appeal,[1] and the habeas court certified his right of appeal. (CR 108-09, 110).

## Statement of Facts

The record contains two sources of information regarding the underlying events of this case: 1) A police report from the date of the offense; (CR 87-88) and 2) three affidavits that the appellant submitted with his habeas petition, but which the trial court found to be not credible. (CR 29-30, 35-42; Supp. CR 7).

---

[1] The notice of appeal was filed on March 9, which would be 34 days after the date on which the trial court entered its order denying relief. However, the notice of appeal also seems to have been mailed, which might render it timely filed. The State received a copy of the notice of appeal via fax on March 5, the thirtieth day after relief was denied.

The police report indicates that the officer was dispatched to the appellant's home "in response to a possible family disturbance." (CR 87). The complainant was Juana Lerma, who at that time had been the appellant's wife for twelve years. (CR 87). Juana told the officer that she had gotten a phone call from an unknown woman, and the woman had claimed to be the appellant's "girlfriend." (CR 87). Juana said that she and the appellant had a "heated verbal argument," after which Juana went to a friend's residence. (CR 87).

> [Juana] stated that the [appellant] later came to her friend's residence and forced her to leave with her [*sic*.]. She stated that she attempted to get out of their vehicle and the [appellant] struck her several times, causing her physical pain. [Juana] stated that once they got back to their residence they continued to argue. [Juana] stated that the [appellant] grabbed her around the neck and throat and choked her causing her physical pain. I observed that [Juana] had red marks around her neck and upper chest area. [Juana] stated that the [appellant] then grabbed her by the hair and pulled it forcefully causing her pain.
>
> [Juana] stated that the [appellant] has assaulted her numerous times over the past twelve years. She stated that she has never called before because she depended on the [appellant] financially but that now she is just tired of the assault and abuse.

(CR 87-88).

The appellant's affidavits tell a different story. According to an affidavit from Juana, on May 4, 2002 she received a phone call from a

2

woman claiming she and the appellant "had been seeing each other romantically." (CR 35). Juana said that she and the appellant had an argument about this, and during this argument, she called 911 and said that the appellant had "pushed" her, even though he had not. (CR 35-36). When police arrived, Juana told them that the appellant "pushed" her. (CR 36). The police arrested the appellant, and between that time and February 2014 Juana never spoke about the matter to anyone — not to the appellant's trial counsel, not to any other police officer, not to anyone from the prosecutor's office, and not to the appellant, who moved back in with her after he bailed out of jail and lived with her during the pendency of the charges. (CR 36-37, 40).

According to the appellant's affidavit, on May 4, 2002, he had an argument with Juana regarding his suspected infidelity, and during that argument he "never threatened, pushed, touched, or hit Juana." (CR 39). Juana then went into their home and sometime later police arrived. (CR 39-40). The appellant told the police that he did not touch Juana, but the police arrested him and took him to the station. (CR 40).

The appellant bonded out of jail and hired Manuel Barrera as his attorney. (CR 40). The appellant told Barrera that he did not harm Juana. (CR 40). Barrera never spoke to Juana or the couple's son, Edgar. (CR

3

40). Instead, Barrera advised that his case had been assigned to "a good judge," and if he wanted to go to trial he would have to attend many more court dates than if he pleaded guilty. (CR 40). The appellant now believes that if Barrera had advised him of the possibility of going to a jury trial he would have done so because of "the lack of any physical or other evidence supporting Juana's claim that [he] pushed her." (CR 40). The appellant now claims that he pleaded guilty only "[b]ecause [he] did not have any knowledge that at a jury trial [he] would have had a chance at winning the case ...." (CR 41).

The third affidavit was from the appellant and Juana's son, Edgar Lerma. (CR 29-30). According to this affidavit, on May 4, 2002 Edgar (then fourteen years-old) was standing inside the door and heard his parents having an argument outside. (CR 35). Edgar did not hear any "sounds of violence or physical fighting" during this argument; when Juana came inside he "did not see any signs of physical pain, discomfort, or injury ...." (CR 35).

## Summary of the Argument

The appellant presents on appeal the same three claims that he presented in the trial court, though the State somewhat takes issue with

4

how they have been presented. The appellant purports to raise two types of "actual innocence" claims and an ineffective-assistance claim. However, one of the "actual innocence claims" is a *Schlup* claim which is not an "actual innocence" claim at all; *Schlup* claims provide a method — if the court believes the defendant is probably innocent — for federal courts to address claims of trial error that would otherwise be barred by federal procedural rules. Because *Schlup* does not provide a standalone basis for relief, it is not a standalone claim. The State will address the appellant's claims in what it believes to be the most logical order.

In his first point of error, the appellant claims that the trial court erred in rejecting his actual innocence claim. However, the trial court found the appellant's evidence not credible. Because the trial court's credibility finding is adequately supported by the record, the trial court was correct to reject the appellant's actual innocence claim.

In his second point of error, the appellant claims that the trial court erred in rejecting his ineffective-assistance claim. However, the appellant waited more than twelve years to make this claim, by which time trial counsel had no memory of the case and could not respond to the appellant's claims. The appellant offered no explanation for why he did not assert this claim earlier. Accordingly, this claim is barred by

laches, and the trial court was correct to reject it as such. To whatever degree *Schlup* could provide a basis for addressing this claim on its merits, the trial court was correct in not doing so because the appellant produced no credible evidence of his innocence.

## Reply to Point One

**The appellant did not conclusively prove his innocence. His affidavits failed to rebut the State's evidence. Moreover, in light of the police officer's report the trial court had a basis for concluding that the appellant's evidence was not credible.**

    I.    **Standard of Review: The trial court's findings of fact are entitled to near-total deference, and its ultimate decision is reviewed only for an abuse of discretion.**

Code of Criminal Procedure Article 11.072 "establishes the procedures for an application for a writ of habeas corpus in a felony or misdemeanor in which the applicant seeks relief from an order or a judgment of conviction ordering community supervision." TEX. CODE CRIM. PROC. art. 11.072 § 1. An Article 11.072 writ is litigated through the trial court, and the trial court judge is the sole finder of fact. *Ex parte Garcia*, 353 S.W.3d 785, 788 (Tex. Crim. App. 2011). Accordingly, an appellate court addressing an Article 11.072 writ gives "almost total deference to a trial court's determination of the historical facts that the

record supports …." *Id.* at 787 (quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).

This level of deference applies even if the trial court makes its factual determinations based on affidavits. *Ex parte Ali*, 368 S.W.3d 827, 841 (Tex. App.—Austin 2012, pet. ref'd). The trial court is entitled to make credibility determinations on affidavits, and "is not required to believe factual statements contained within an affidavit, even when they are uncontradicted by other affidavits." *Shanklin v. State*, 190 S.W.3d 154, 167 (Tex. App.—Houston [1st Dist.] 2005), *pet. dism'd, improvidently granted*, 211 S.W.3d 315 (Tex. Crim. App. 2007).

An appellate court reviewing a trial court's ruling on an Article 11.072 writ must review the record evidence in the light most favorable to the trial court's ruling and must uphold that ruling absent an abuse of discretion. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006); *Ex parte Zantos-Cuebas*, 429 S.W.3d 83, 87 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

## II.  Argument

### A. The appellant's *Herrera* claim fails because he did not produce evidence conclusively showing his innocence.

A habeas applicant's assertion that he is entitled to have his conviction reversed because he is actually innocent of the offense for which he was convicted is called an *Herrera* claim, named after *Herrera v. Collins*, 506 U.S. 390 (1993). Granting relief on such a claim is appropriate only if the applicant shows by "clear and convincing evidence that, despite the evidence of guilt that supports the conviction, no reasonable juror could have found the applicant guilty in light of the new evidence." *Ex parte Brown*, 205 S.W.3d 538, 545 (Tex. Crim. App. 2006) (quoting *Ex parte Tuley*, 109 S.W.3d 388, 392  (Tex. Crim. App. 2002).

This showing must overcome the presumption that the conviction is valid and it must unquestionably establish the applicant's innocence. *Ibid*. Because of the respect that the legal system owes to legally-obtained verdicts, making such a showing is "a Herculean task." *Ibid*. The Court of Criminal Appeals has given as examples of the sort of evidence that is capable of supporting such a finding: "trustworthy witness recantations ... exculpatory scientific evidence, trustworthy eyewitness

accounts, and critical physical evidence." *Ex parte Franklin*, 72 S.W.3d 671, 678 n.7(Tex. Crim. App. 2002). Though this list is non-exclusive, the focus on reliability and credibility emphasizes that habeas courts are not to lightly revisit jury verdicts.

In this case, the appellant produced three affidavits: one from him, one from the complainant, and one from their son. The trial court found those affidavits not credible, and this Court is obliged to defer to that finding.

Even if the trial court found the affidavits credible, they would not support a finding of actual innocence. The affidavit from the appellant is of no value here; a defendant's statement that he is innocent is not the sort of evidence that will support a *Herrera* claim. The affidavit from the son provides no affirmative evidence of innocence; the closest it gets is to say that the son did not witness the appellant beat the complainant.

The complainant's recantation is the appellant's best evidence, but it is still insufficient to support a finding of actual innocence. In *Ex parte Navarilo*, the Court of Criminal Appeals addressed an *Herrera* claim in which the complaining witness recanted her accusations. *Ex parte Navarilo*, 433 S.W.3d 588 (Tex. Crim. App. 2014). The evidence of guilt at trial had consisted of the complainant's testimony as well as testimony

9

from others regarding injuries the complainant had suffered from Navarilo's sexual assault. *Id*. at 560-63. At the habeas hearing, thirteen years after the trial, the complaining witness said that Navarilo had not committed the offense, and she had only testified that he did because her grandmother had put her up to it. *Id*. at 564-66. The trial court found that her recantation was credible — indeed, more credible than her trial testimony had been — and recommended that relief be granted. *Id*. at 566.

The Court of Criminal Appeals rejected this, however, because the recantation did not include as much detail as had the complainant's trial testimony, and because the recantation did not explain away the physical evidence presented at trial. *Id*. at 568-71. Accordingly, the court concluded that a reasonable juror, when confronted with the trial evidence and the recantation evidence, could still have convicted Navarilo, thus he had not proven he was actually innocent.

This case is quite similar. The complainant's affidavit, on its own, seems to show that the appellant was innocent, but it provides no explanation for the injuries that the police officer observed when he responded to the call. *Compare* CR 35-37 *to* CR 87-88. Moreover, the recanting affidavit is less detailed than was the statement that the

10

complainant made to the police officer: The statement to the officer described the complainant going to a friend's house and the appellant forcing her to go home, it specified that the appellant had been abusing her for years, and it specified that the appellant assaulted her in several ways (striking, choking, and pulling hair); the recanting affidavit merely said that on one particular date at one particular place the appellant did not assault her by pushing her. Faced with the evidence that the State had at the time the appellant pled guilty, a rational juror could have discounted the complainant's later recantation and still concluded that the appellant had assaulted her. Accordingly, even if the appellant's affidavits were credible they would not support his *Herrera* claim.

### B. This Court should reject the appellant's "*Schlup-type* claim of innocence" because *Schlup* is irrelevant to this case.

In his first point, which relates to his claim of "actual innocence," the appellant presents what he calls his "*Schlup-type* claim of innocence." (Appellant's Brief at 7-8). In *Schlup v. Delo*, the Supreme Court dealt with a habeas applicant whose claims were barred by federal rules of procedure because he had failed to raise the claim in a previous writ application. *Schlup v. Delo*, 513 U.S. 298, 301 (1995).

However, Schlup accompanied his allegations of trial error with evidence tending to show that he was actually innocent of the charged offense. *Id.* at 306-11. The Supreme Court held that, because habeas is an equitable remedy, if a petitioner whose claims of trial error are otherwise barred by the federal prohibition on subsequent writ applications can produce evidence showing that "more likely than not" he is actually innocent, the habeas court should waive application of that prohibition and address his allegations of trial error on the merits. *Id*. at 326-27.

Although Texas courts have developed the unfortunate habit of referring to "*Schlup* actual innocence claims," *Schlup* itself did not involve a claim that the applicant should be released based on his innocence. The claim in *Schlup* involved nothing more than waiving a federal procedural rule for the narrow class of applicants who can provide substantial proof of their innocence; to gain relief on a *Schlup* claim a petitioner must still show that there was constitutional error at his trial. *Schlup* described itself as opening a procedural "gateway" for certain petitioners to present their claims of constitutional error at trial. *Id*. at 316.

12

Moreover, *Schlup* was a federal case that created an equitable exception to federal procedural rules; its application to a state habeas case, which is controlled by state statutory law, is not obvious. *See Ex Parte Villegas*, 415 S.W.3d 885, 887 (Tex. Crim. App. 2013) (Price, J., concurring). Even if this case involved a procedural bar on the appellant raising his claim — which it does not — Section 9 of Article 11.072 governs subsequent writs in cases like the appellant's, and *Schlup* (which was *not* decided on constitutional grounds) would be of no effect.

There is not now and there never has been any procedural bar to the appellant raising his "actual innocence" or ineffective-assistance claims. *Schlup* has no relevance to this case. *See Villegas*, 415 S.W.3d at 886-87 (per curiam) (where petitioner raises claim on initial petition, consideration of "*Schlup* innocence claim" is irrelevant because there is no procedural bar to overcome).

**Reply to Point Two**

**The appellant's ineffective-assistance claim is barred by laches because he waited more than twelve years to raise it and he has offered no reason to justify the delay.**

In his habeas application, the appellant alleged that his trial counsel had rendered ineffective assistance, and that his guilty plea was involuntary because of this ineffective assistance. (CR 19-24). The trial court ordered trial counsel to file an affidavit answering numerous questions, but in his affidavit trial counsel replied that he had no recollection of this case whatsoever and he had lost his files from 2002. (CR 82-86). The trial court found that the appellant's "unreasonable delay of almost twelve years in pursuing his habeas claim … prejudiced [the State] in its ability to respond," thus the appellant's claim was barred by the doctrine of laches. (CR 6).

Laches is an equitable doctrine that bars a party's claim if that party's unreasonable delay in raising the claim has resulted in prejudice to the opposing party. *Ex parte Perez*, 398 S.W.3d 206, 210 (Tex. Crim. App. 2013) (citing *Ex parte Carrio*, 992 S.W.2d 486, 487-88 (Tex. Crim. App. 1999)). The Court of Criminal Appeals has long held that laches can apply to post-conviction writs of habeas corpus, and in a recent case

noted that laches applies to Article 11.072 writs. *See Ex parte Bowman*, 447 S.W.3d 887, 888 (Tex. Crim. App. 2014).

In this case, the appellant waited twelve years to file his writ petition. *See Perez*, 398 S.W.3d at 216 (noting general guideline that the State's ability to retry a defendant is diminished after five years). Neither in the trial court nor on appeal has he made any effort to justify this delay. All of the information he presented in his habeas petition has been available to him since his guilty plea; he lived with the complainant and his other supposedly exculpatory witness during the pendency of his charges, so whether or not his attorney spoke with them should have been readily ascertainable. (*See* CR 40 (appellant's affidavit criticizing defense counsel for not speaking with complainant and witness who lived in same home as appellant)).

Because of the appellant's delay, the State's ability to respond to his claim has been prejudiced: Trial counsel's time-related memory and document loss make it impossible to obtain any credible evidence as to his actions and the reasons for them. The trial court's conclusions that the appellant's claim is barred by laches is supported by the record, and

15

accordingly this Court should reject the appellant's second point of error.[2]

---

[2] It might be tempting to ask whether *Schlup* would provide a basis for addressing the appellant's claim despite laches. The State urges this Court to resist that temptation. First, the interaction between *Schlup* and laches is a novel matter that the appellant has not briefed and on which the State can find no authority; neither this Court nor the State should make the appellant's argument for him. Second, *Schlup* works to circumvent federal *procedural* rules, but laches is an equitable doctrine that is substantive in nature. *See Ex parte Smith*, 444 S.W.3d 661, 665 (Tex. Crim. App. 2014) (explaining substantive reasons for applying laches). Third, even if *Schlup* could apply to circumvent laches, the trial court found the evidence of the appellant's innocence to be not credible and this Court must defer to that determination.

## Conclusion

The State respectfully submits that all things are regular and the judgment of the trial court should be affirmed.

> **DEVON ANDERSON**
> District Attorney
> Harris County, Texas
>
>
> /s/ C.A. Morgan
> **CLINTON A. MORGAN**
> Assistant District Attorney
> Harris County, Texas
> 1201 Franklin, Suite 600
> Houston, Texas  77002
> 713.755.5826
> Texas Bar No. 24071454

## Certificate of Compliance and Service

I certify that, according to Microsoft Word's word counting function, the portion of this brief for which Rule of Appellate Procedure 9.4(i)(1) requires a word count contains 3,154 words.

I also certify that I have requested that efile.txcourts.gov electronically serve a copy of this brief to:

Lance Nguyen
lancehac2@gmail.com

/s/ C.A. Morgan
**CLINTON A. MORGAN**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002-1923
(713) 755-5826
Texas Bar No. 24071454

Date: July 9, 2015