**Opinion issued April 19, 2022**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-21-00689-CR

———————————

## EX PARTE WILLIAM CANE LUCE, APPLICANT

---

**On Appeal from the 149th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 89435-CR**

---

## MEMORANDUM OPINION

Applicant, William Cane Luce, appeals from the trial court's denial of his application for writ of habeas corpus.[1]  In six issues, appellant argues that his guilty plea was involuntary because he received ineffective assistance of counsel.

---

[1] *See* TEX. CODE CRIM. PROC. art. 11.072 (providing person confined on charge of felony conviction who received community supervision may apply for writ of habeas corpus).

We affirm.

## Background

Applicant was indicted for burglary of a habitation. During a plea hearing on August 13, 2020, the State offered three years of deferred adjudication with 250 hours of community service, among other terms. Applicant's defense counsel, Rachel Dragony, confirmed that she received the State's offer and that she conveyed it to applicant. When the trial court asked applicant if he had plenty of time to talk to his attorney about the offer, applicant responded, "Yes." Ms. Dragony then asked applicant a few questions:

> Dragony: Sir, knowing that you have that offer on the table, are you rejecting that offer today and you wish to go on to a jury trial?
>
> Applicant: Yes, ma'am.
>
> Dragony: Okay. Your Honor, we are asking to go on to a jury trial, then, as soon as the Court is able to do so.

The trial court confirmed a September trial and made sure that applicant understood that it would not accept an offer after the hearing, which applicant acknowledged. The following exchange then occurred:

> Applicant: Your Honor, the only reason why I'm not accepting is because I'm not sure on the community service. I don't think I—I don't know if I'll have time to go—I work so many hours. I don't know if I can do it. It will revoke my probation; right?

Court:       Why don't ya'll step back and talk about that if that is your issue. Probation is in there. If you have questions about it, I'm sure Ms. Dragony can get those answered for you. It's important that you get all your questions answered and you make an informed decision today. Okay?

Applicant:   Okay.

Court:       So ya'll step back and talk about it a little more and see if you can't get those questions answered.

After a recess, another exchange occurred:

Court:       Do you understand you have a right to a trial by jury in this matter?

Applicant:   Yes.

Court:       Do you want to waive that right?

Applicant:   Yes.

Court:       You also have the right to have this indictment read aloud here in the courtroom. Should I have it read, or do you want to waive the reading—

Applicant:   Waive it.

Court:       To the indictment, then, how do you plead, guilty or not guilty?

Applicant:   Guilty.

Court:       Did anybody force you or threaten you to make you enter that plea?

Applicant:   No.

Court:       Are you pleading freely and voluntarily?

3

Applicant: Yes.

Court: Are you pleading guilty because you are guilty?

Applicant: Yes.

After applicant pleaded guilty, the trial court withheld a finding of guilt and sentenced him to deferred adjudication for three years. The State subsequently moved to adjudicate his guilt on October 12, 2020 and May 17, 2021.[2] On October 14, 2021, applicant filed an application for writ of habeas corpus, challenging the voluntariness of his guilty plea based on ineffective assistance of counsel during his plea. Applicant argued that his defense counsel was ineffective by (1) failing to ascertain the charges against him; (2) failing to quash the indictment due to its lack of particularity; (3) failing to investigate the facts to determine whether the elements of the charge were met; (4) failing to research applicable law regarding burglary of a habitation; (5) giving defective advice when recommending a plea; and (6) committing cumulative errors. Applicant asserted that without defective counsel, the charges "would have been dropped or allowed for a lesser-included charge of criminal trespass and Applicant would not have entered a plea of guilty for burglary." Applicant further asserted that had he received adequate advice after a

_____

[2]     The State initially filed a motion to adjudicate on October 12, 2020 but sought to dismiss that motion for lack of evidence. After the trial court dismissed the October 12, 2020 motion, the State then filed a second motion to adjudicate guilt on May 17, 2021.

thorough investigation by his counsel, he would not have pled guilty and would have

proceeded to trial on the merits with the lesser-included charge of criminal trespass.

Applicant attached his own affidavit to his application, in which he testified:

> On January 1, 2020, I was asked by Nicole Massey to enter her residence and give a Harley Wynne a ride home. I entered Ms. Massey's home as requested. I never intended to do a crime. I never concealed myself either inside or outside the residence.
>
> I was also at the house to give Mr. Dourian a ride.
>
> . . .
>
> After being charged, I was represented by attorney Rachel Dragony. Ms. Dragony only met with me a handful of times and never discussed discovery in my case. I also never met with an investigator. Throughout our meetings I maintained my innocence.
>
> Without discussing the evidence in my case or applicable law, Ms. Dragony recommended that I take a plea offer of deferred adjudication.
>
> I am not an attorney and have limited experience with the criminal justice system. I was unaware of the weakness in the State's case and believed that pleading guilty was my only option.
>
> Had I been informed of the lack of evidence in my case, I would not have pled guilty but would have instead proceeded to trial.

The trial court designated the issues to be addressed and determined the habeas application would be resolved through the submission of affidavits. The State answered the application, generally denying applicant's arguments.[3]

Applicant's defense counsel filed an affidavit, in which she testified:

> In my normal course of practice, Mr. Luce and I discussed his case and then approached the judge after discussing the plea offer from the State of Texas and the evidence in the case. The Complaining Witness, Ms. Nicole Massey did want to go forward on the case and was ready to testify at trial per my conversations with the prosecuting attorney, Travis Townsend and the notes in the District Attorney's file. Mr. Luce and I approached the judge at the bench, we went over the exact plea offer. I asked him a few questions on the record and he stated he was rejecting that plea offer and wanted to proceed on to trial. Per Mr. Luce's wishes, I asked on his behalf for a jury trial and the judge said to schedule it and we would be able to proceed in September of 2020. Then he spoke up to the judge and said the only reason he was rejecting the plea offer was that he was not sure about the community service and his work hours. This question was not asked of him, he volunteered this information to the judge. The judge suggested that we step back and discuss the community service hours if that was his issue. I then discussed the community service hours with the prosecutor and Mr. Luce and the prosecutor agreed to lower the community service hours from 250 to 200 hours. We then went through the normal proceedings with the judge for entering a plea of guilt and setting aside the finding of guilt and placing him on deferred adjudication probation. He stated he wanted to waive his right to a jury trial and appeal and no one threatened or coerced him and he was entering the plea of his own free will. I discussed all of the documents he signed and the judge again went over them. He also said he wanted to waive the reading of the indictment and stated he was satisfied with my representation of him.

---

[3] On December 7, 2021, the State filed a memorandum of law in support of the State's original answer.

6

. . .

Mr. Luce and I were going to trial and would put on witnesses and confront his accusers; however, Mr. Luce changed his mind and said he wanted to take the plea bargain. I did investigate the case and discussed with Mr. Luce the evidence and his charge and we had more time to work on the case and prepare for trial but he decided he wanted to take the plea after his community service hours were lowered.

The indictment met the elements of burglary of a habitation and stated that he entered the habitation of Nicole Massey without effective consent and attempted or did commit an assault against Matthew Dourian. The code states that a person commits a Burglary of a Habitation if he or she enters or remains concealed within a habitation with intent to commit a felony, theft or assault or once inside they actually commit or attempt to commit a felony, theft or assault. Mr. Luce then sought out Mr. Dourain on the property and assaulted him in his truck when he didn't find him in the residence, after he entered the residence.

The trial court denied applicant's application on December 8, 2021, and issued findings of fact. The trial court's findings include:

(1)     A Brazoria County grand jury charged Applicant by indictment on February 20, 2020, with the offense of burglary of habitation.

(2)     On August 13, 2020, this Court held a hearing to formally document the plea offer from the State in this case, which was to either be accepted or rejected on that date. This was to be Applicant's last opportunity to accept the State's offer prior to a jury trial.

(3)     The State put its plea offer recommendation of three years deferred adjudication on the record, which included as a term a total of 250 hours of community service. Applicant initially rejected that offer.

7

(4)     Ms. Dragony requested to have a jury trial "as soon as the Court [was] able to do so."

(5)     Applicant then stated, without any prompting by Ms. Dragony, that he wished to take the State's offer but was concerned about the amount of community service hours and whether he could complete it.

(6)     After Applicant's counsel and the State further discussed the matter off the record, Applicant agreed to the State's plea offer after the community service hours were reduced from 250 to 200.

(7)     When back on the record, Applicant indicated that he wished to waive his right to a trial by jury and the reading of the indictment. He pleaded guilty to burglary of a habitation and indicated that no one had forced or threatened him to make that plea. He stated he was pleading freely and voluntarily, and was doing so only because he was guilty.

(8)     Applicant acknowledged that he had signed his admonitions, indicated he was waiving his right to trial, right against self-incrimination, and right to call witnesses and question them, and limiting his right to appeal.

(9)     Applicant indicated Mr. Dragony had done everything that he needed her to do, and that he was pleased with her representation.

(10)    This Court accepted Applicant's plea of guilty, but withheld a finding of guilt, and placed him on deferred adjudication for a term of three years.

(11)    The State filed its first Motion to Adjudicate Guilt in this cause on October 12, 2020. Applicant's community supervision was amended and the motion dismissed.

(12) The State filed a second Motion to Adjudicate Guilt on May 17, 2021, alleging that Applicant had committed the offense of felony evading arrest, as well as multiple technical violations.

(13) Applicant filed his Code of Criminal Procedure article 11.072 writ of habeas corpus on October 14, 2021. This Court signed an Order Designating Issues and Setting Submission Date on October 15, 2021.

(14) In response to this Court's Order Designating Issues, Ms. Dragony filed an affidavit on November 24, 2021.

(15) Ms. Dragony testified through her affidavit that Applicant and she discussed the plea offer from the State as well as the evidence in the case. She stated that the complaining witness, Nico[le] Massey, did want to go forward on the case and was ready to testify at trial based on conversations with the State's attorneys and his notes.

(16) Ms. Dragony testified that Applicant rejected the State's offer of three years deferred adjudication on the record. She stated that she asked this Court for a jury trial. Ms. Dragony stated that Applicant then said he was only rejecting the offer because he was not sure he could complete the community service hours.

(17) Ms. Dragony testified that the State's attorney agreed to lower the community service hours from 250 to 200. Ms. Dragony stated that Applicant indicated he wished to waive his right to a jury trial and appeal, and that he was entering his plea voluntarily. She discussed the applicable documents with him when he signed. She also noted that Applicant was satisfied with her representation.

(18) Ms. Dragony recounted the State's evidence in her affidavit. The evidence described in Ms. Dragony's affidavit is consistent with the probable cause affidavit submitted by the State and designated during Applicant's plea as State's Exhibit 3. Applicant stipulated through Ms.

9

Dragony during his plea that, if witnesses were called to testify, they would testify as to what was substantially laid out within State's Exhibit 3.

(19) Ms. Dragony testified through her affidavit that it was Applicant who changed his mind and decided he wanted to take the plea offer.

(20) Ms. Dragony testified through her affidavit that she investigated the case and discussed the evidence with Applicant. She stated that she told Applicant that they had more time to work on the case and prepare for trial but that he decided to take the plea after the community service hours were lowered.

(21) This Court finds Ms. Dragony's testimony through her affidavit to be credible.

(22) This Court finds Applicant's testimony through his affidavit in support of his allegations to not be credible.

Applicant timely filed a notice of appeal on December 9, 2021. The court reporter filed the reporter's record on December 21, 2021, and the trial court clerk filed the clerk's record on December 29, 2021.

**Standard of Review**

In reviewing the trial court's order denying habeas corpus relief, the appellate court affords "almost total deference to the judge's determination of the historical facts that are supported by the record, especially when the fact findings are based on an evaluation of credibility and demeanor." *Ex parte Wilson*, 171 S.W.3d 925, 928 (Tex. App.—Dallas 2005, no pet.); *see also Phuong Anh Thi Le v. State*, 300 S.W.3d 324, 327 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding that, in reviewing

10

trial court's ruling on habeas corpus petition, reviewing court must defer to all implied factual findings supported by record). The appellate court "will sustain the lower court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case." *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

When, as here, an applicant seeks relief under Article 11.072 from an order that orders community supervision, "the trial judge is the sole finder of fact." *See Ex parte Torres*, 483 S.W.3d 35, 43 (Tex. Crim. App. 2016) (citing *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013)). In habeas proceedings, "[v]irtually every fact finding involves a credibility determination," and "the fact finder is the exclusive judge of the credibility of the witnesses." *Ex parte Mowbray*, 943 S.W.2d 461, 465 (Tex. Crim. App. 1996). Accordingly, we must afford almost total deference to the habeas court's findings of fact when those findings are supported by the record. *See Torres*, 483 S.W.3d at 43. "We similarly defer to any implied findings and conclusions supported by the record." *Ex parte Harrington*, 310 S.W.3d 452, 456 (Tex. Crim. App. 2010). However, we review de novo mixed questions of law and fact that do not depend upon credibility and demeanor. *Ex parte Zantos-Cuebas*, 429 S.W.3d 83, 87 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

**Ineffective Assistance of Counsel**

In six issues, applicant argues that his guilty plea was involuntary because he received ineffective assistance of counsel.

**Applicable Law**

To be valid, a plea must be entered voluntarily, knowingly, and intelligently. TEX. CODE CRIM. PROC. art. 26.13(b); *Fuller v. State*, 253 S.W.3d 220, 229 (Tex. Crim. App. 2008). A plea is not entered voluntarily and knowingly if made as the result of ineffective assistance of counsel. *Ulloa v. State*, 370 S.W.3d 766, 771 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). A defendant has a Sixth Amendment right to the effective assistance of counsel in guilty-plea proceedings. *Ex parte Harrington*, 310 S.W.3d at 458.

"[T]o prevail on a Sixth Amendment claim of ineffective assistance of counsel, a habeas applicant must show, by a preponderance of the evidence," that: (1) "counsel's performance was deficient" in that counsel "failed to satisfy an objective standard of reasonableness under prevailing professional norms" and (2) applicant was prejudiced as a result of counsel's errors in that, but for those errors, there is a reasonable probability of a different outcome. *Ex parte Bowman*, 533 S.W.3d 337, 349–50 (Tex. Crim. App. 2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). An applicant's claim fails unless he proves both prongs of the *Strickland* standard by a preponderance of the evidence. *Perez v. State*, 310

S.W.3d 890, 893 (Tex. Crim. App. 2010). To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

Under the first prong, "reasonableness" is "assess[ed] under the circumstances of the particular case 'viewed as of the time of counsel's conduct.'" *Ex parte Bowman*, 533 S.W.3d at 350 (quoting *Strickland*, 466 U.S. at 688, 690). "There are countless ways to provide effective assistance in any given case." *Strickland*, 466 U.S. at 689. "[C]ounsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." *Id*. at 690.

The second prong requires appellant to show counsel's deficient performance caused appellant to suffer prejudice. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Ex parte Torres*, 483 S.W.3d at 43. When a plea agreement is at issue, an applicant meets the prejudice prong by showing a reasonable probability that, but for counsel's deficient performance, the applicant would have "insisted on going to trial" rather than accepting the offer and pleading guilty. *Lee v. United States*, 137 S. Ct. 1958,

13

1967 (2017); *Ex parte Torres*, 483 S.W.3d at 45. In evaluating the evidence of appellant's decision making regarding his plea, "[c]ourts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee*, 137 S. Ct. at 1967. Reviewing courts must "look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* Other factors considered in conducting the prejudice prong analysis include the likelihood of a petitioner's success at trial, the benefits he received from the plea bargain, and the trial court's plea admonishments. *Ex parte Torres*, 483 S.W.3d at 43.

**Failure to Ascertain the Charges**

In his first issue, applicant argues that his counsel was "deficient when she failed to ascertain the exact charge against Applicant." Specifically, applicant argues that his "Defense Counsel did not determine the statutory underpinning of Applicant's charge because Defense Counsel did not object that the indictment did not specify the applicable statute."

"The certainty required in an indictment is such as will enable the accused to plead the judgment that may be given upon it in bar of any prosecution for the same offense." TEX. CODE CRIM. PROC. art. 21.04. An indictment is deemed sufficient when it "charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is

14

meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment." *See id*. art. 21.11.

Section 30.02 provides that a person commits an offense if, without the effective consent of the owner, the person enters a building or habitation and commits or attempts to commit a felony, theft, or an assault. *See* TEX. PEN. CODE § 30.02(a)(3). Texas courts have long held that indictments that track the language of a criminal statute possess sufficient specificity to provide a defendant with notice of a charged offense in most circumstances. *State v. Edmond*, 933 S.W.2d 120, 128 (Tex. Crim. App. 1996).

Here, the indictment charged applicant with burglary of a habitation in that applicant on or about January 1, 2020 "did then and there intentionally or knowingly enter a habitation, owned by Nico[le] Massey, without the effective consent of said owner, and therein attempted to commit or committed assault against Matthew Dourian." Because the State's indictment tracked the language of section 30.02, the indictment was sufficient to put applicant on notice that he was being charged under section 30.02(a)(3).[4] Accordingly, applicant has not shown that his defense counsel rendered deficient performance in failing to ascertain the charges.

---

[4] To the extent that applicant complains of a discrepancy between the trial court's deferred adjudication order listing the offense as Texas Penal Code section 30.02(c)(2) and a police report indicating that "applicant's charge at arrest was per

We overrule applicant's first issue.

**Failure to Quash the Indictment**

In his second issue, applicant argues defense counsel was deficient because she failed to move to quash the indictment. Specifically, applicant contends that the burglary statute defines entry to include partial or full body entry into the habitation. In contrast, the criminal trespass statute requires an actor to make a full body entry into the habitation.[5] Applicant therefore contends that because the indictment did not specify whether entry was full body or partial body, the indictment would have been subject to a motion to quash and that he was prejudiced "by the fact he could have proceeded to trial with a lesser-included misdemeanor instruction."

Applicant merely makes this assertion in his writ application, but he does not aver to such facts in his writ affidavit, and we find no evidence to support this assertion advanced during the plea proceedings. Instead, the trial court's findings,

---

33.02(a)(2)," applicant neither asserts any argument, nor cites any authority that failing to object to this discrepancy rendered defense counsel ineffective during the plea proceedings. Thus, the argument is waived. *See* TEX. R. APP. P. 38.1(i) (requiring brief to contain "clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). Although the police report indicated applicant was cited for an offense under section 33.02, the relevant charging instrument is the indictment, which charged applicant under section 33.02(a)(3). *See* TEX. CODE CRIM. PROC. art. 21.01

[5] An individual commits the offense of criminal trespass if he "enters or remains on or in property of another . . . without effective consent" and "had notice that the entry was forbidden" or "received notice to depart but failed to do so." TEX. PENAL CODE § 30.05(a). "'Entry' means the intrusion of the entire body." *Id.* § 30.05(b)(1).

16

which are supported by the record, demonstrate that applicant rejected the State's initial plea bargain and requested a jury trial. Applicant then voluntarily informed the trial court that he rejected the plea bargain, not because of any defects with the indictment, but because he was concerned that he would be unable to complete the community service hours. Once the State agreed to lower the community service hours, applicant accepted the plea.

Applicant's affidavit did state that had he been informed of the lack of evidence, he would not have pleaded guilty but would have instead proceeded to trial, but applicant made no showing or submitted any evidence that he would have rejected the plea and proceeded to trial if his defense counsel had sought to quash the indictment. *See Lee*, 137 S. Ct. at 1961 ("Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies."). Thus, applicant's allegations are insufficient regarding the showing of prejudice required on a claim of an involuntary plea due to ineffective assistance of counsel. *See Hill*, 474 U.S. at 60; *see also Ex parte Ali*, 368 S.W.3d 827, 835 (Tex. App.—Austin 2012, pet. ref'd) (holding court need not address *Strickland's* deficiency prong where prejudice prong is dispositive).

We overrule applicant's second issue.

17

**Failure to Investigate the Facts**

In his third issue, applicant argues that his defense counsel was deficient by failing to investigate the facts, which would have showed that the elements of burglary of a habitation were not met.

A criminal defense attorney has a duty to make an independent investigation of the facts of a case. *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990); *Toledo v. State*, 519 S.W.3d 273, 287 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). In defining this obligation, the United States Supreme Court has stated that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. However, the Court explained that "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id*. Further, even if the defense attorney breaches his duty to investigate, he may be found ineffective only "where the result is that any viable defense available to the accused is not advanced" and there is a reasonable probability that, but for the failure to present that defense, the result of the proceeding would have been different. *Ex parte Ybarra*, 629 S.W.2d 943, 946 (Tex. Crim. App. 1982).

In its eighteenth finding, the trial court found that defense counsel recounted the State's evidence in her affidavit and that the description that defense counsel

18

gave of the evidence was consistent with the probable cause affidavit submitted by the State. The trial court further found that, at the plea hearing, applicant stipulated through his defense counsel that, if witnesses were called to testify, they would testify as to what was substantially laid out within the probable cause affidavit.

In its twentieth finding, the trial court found that "Ms. Dragony testified through her affidavit that she investigated the case and discussed the evidence with Applicant. She stated that she told Applicant that they had more time to work on the case and prepare for trial but that he decided to take the plea after the community service hours were lowered."

Applicant's affidavit merely stated that "[w]ithout discussing the evidence in my case or applicable law, Ms. Dragony recommended that I take a plea offer of deferred adjudication." Even assuming that this statement raised the issue that his defense counsel failed to investigate the facts, applicant's affidavit was refuted by defense counsel's affidavit that she did investigate the case. In its findings, the trial court found that defense counsel investigated the case, she was credible, and applicant was not credible. *See Ex parte Fassi*, 388 S.W.3d 881, 888 (Tex. App.— Houston [14th Dist.] 2012, no pet.) (stating, "[T]he habeas court was free to disbelieve appellant's self-serving testimony"). The trial court's finding that defense counsel investigated the case is supported by the record, and we defer to the trial court's findings based on credibility. *Id.* Thus, we cannot say that applicant

19

demonstrated that his defense counsel rendered deficient performance by failing to investigate the facts. *See Straight v. State*, 515 S.W.3d 553, 568 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (explaining that ineffective-assistance claim "based on trial counsel's general failure to investigate" will fail absent "a showing of what an investigation would have revealed that reasonably could have changed the result of the case" and overruling issue because defendant "did not present any evidence regarding what" investigation would have revealed).

We overrule applicant's third issue.

**Failure to Research Applicable Law**

In his fourth issue, applicant argues that his defense counsel failed to research applicable law regarding burglary of a habitation. Specifically, applicant argues that he was being prosecuted for violating Texas Penal Code section 30.02 and that his conduct did not meet the elements of burglary.

Applicant's argument that his defense counsel failed to research applicable law is not supported by any record evidence. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (stating that ineffective assistance of counsel claims must be firmly rooted in record, with record affirmatively demonstrating alleged ineffectiveness). Moreover, applicant has neither explained how defense counsel failed to research applicable law, nor has he acknowledged that defense counsel's affidavit states that the indictment properly alleged the elements of

20

burglary of a habitation. Instead, applicant's argument rests on the assumption that his version of the facts was credible. However, in its twenty-first and twenty-second finding, the trial court found defense counsel to be credible and applicant to not be credible. *See Ex parte Skelton*, 434 S.W.3d 709, 717 (Tex. App.—San Antonio 2014, pet. ref'd) ("The habeas court is the sole finder of fact in an article 11.072 habeas proceeding, and we afford almost total deference to its determinations of historical fact that are supported by the record."); *Ex parte Fassi*, 388 S.W.3d at 888 ("[T]he habeas court was free to disbelieve appellant's self-serving testimony."). Because of the trial court's credibility findings and applicant's complaint not being firmly founded in the record, we cannot say that defense counsel rendered deficient performance by failing to research applicable law. *Goodspeed*, 187 S.W.3d at 392.

We overrule applicant's fourth issue.

**Defective Advice**

In his fifth issue, applicant argues that his defense counsel gave defective advice when recommending that he plead guilty in exchange for deferred adjudication.

Other than applicant's self-serving statement in his affidavit that his defense counsel recommended that he take a plea offer of deferred adjudication, nothing in the record supports applicant's claim that his defense counsel recommended that he plead guilty or gave him defective advice. *See Goodspeed*, 187 S.W.3d at 392; *see*

*also Ex parte Fassi*, 388 S.W.3d at 888 ("[T]he habeas court was free to disbelieve appellant's self-serving testimony."). Instead, in its seventh finding, the trial court found that applicant pleaded guilty because he was guilty and that no one coerced him into pleading guilty. This finding is supported by the record. In light of the trial court's finding on credibility and appellant's complaint not being firmly founded in the record, we conclude applicant has not showed that his defense counsel rendered deficient performance in giving defective advice.[6]

We overrule applicant's fifth issue.

## Conclusion

We affirm the trial court's order that denied applicant's application for writ habeas corpus.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Countiss and Farris.

Do not publish. TEX. R. APP. P. 47.2(b).

---

[6] In his sixth issue, applicant argues that his defense counsel's cumulative errors resulted in him entering a guilty plea for a crime he did not commit. The cumulative errors listed are the same ones we have already determined were either not deficient representation or were not shown to have caused prejudice. We need not address the issues a second time. *See* TEX. R. APP. P. 47.1.